(Decided April 1st, 1897).

---

# THOMAS M. FORD *vs.* THE STATE OF MARY-LAND.

*Police Power—Criminal Law—Statute Prohibiting the Possession of Lottery or Policy Slips—Knowledge by Party that Prohibited Articles are in his Possession not Necessary—Constitutional Law—Ignorance of Law or Fact.*

Laws reasonably necessary for the protection of the health, morals or safety of society are within the police power of the State and are constitutional.

Since the suppression of lottery gambling is demanded in the interest of the public welfare, the Legislature has the power to prohibit, under a penalty, any one from having lottery tickets in his possession, whether he knows what they are or not.

As ignorance of the existence of a law is no excuse for its violation, so also ignorance of a fact necessary to be known in order to avoid a violation of the law will not excuse.

When a statute prohibits the possession of certain articles, it is no excuse that a party does not know that the article possessed by him is a prohibited article.

The Act of 1894, chap. 310, provides that if any person shall have in his possession any book, list or slip of lottery or policy drawings

etc., he shall be liable to indictment, etc., unless the possession be for the purpose of procuring evidence of a violation of the lottery law. Defendant was indicted under the statute and pleaded that the lottery slips which were found in his possession were given to him to carry to a certain place, and that he did not know what the articles were. *Held,*

1st. That these facts constituted no defence, since under the statute the mere possession of the articles was made a crime without regard to the purpose for which the party held them, and this crime was not made to depend upon knowledge by the party of the character of the articles.

2nd. That the statute is not unconstitutional; it does not deprive a party of the presumption of innocence to which he is entitled. The crime for which he is indicted is having lottery slips in his possession, and he may show either that such articles were not in his possession, or that those found there were not such as the law prohibited him from having.

Appeal from the Criminal Court of Baltimore City (STOCKBRIDGE, J.), where the case was submitted to the Court under a plea of *non cul.* and a verdict of guilty rendered. A motion in arrest of judgment because the Court erred in overruling defendant's demurrer to the indictment, and a motion for a new trial because the Court refused to admit evidence to show that the defendant did not know that the articles found in his possession were policy books, were both overruled by the Supreme Bench of Baltimore City.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*B. Chambers Wickes* (with whom was *T. C. Ruddell* on the brief), for the appellant.

The objectionable clause in the Act of 1894, chapter 310, section 178, under which the 4th and 5th counts in this indictment are drawn, provides that: "If any person shall have *in his possession* in this State," certain enumerated articles, he shall, upon conviction, "be fined any sum not exceeding one thousand dollars, or shall be imprisoned for a period not exceeding one year, or shall be both fined and

imprisoned." This clause, the Court below construed to mean that the mere physical possession of certain enumerated articles, was conclusive evidence of guilt, and refused to allow any defence to be made by the accused. If there is no error in this ruling; if this is a correct construction of the clause in question; then we submit that this clause is unconstitutional and must fall. It is in conflict with the Constitution of the United States, the supreme law of the land, and also with the Declaration of Rights.

A law which deprives the accused of the presumption of innocence; which creates artificial presumptions and makes certain facts conclusive evidence of guilt, which in their nature are not so, and which permits only one party to present proofs; takes away from a judicial trial the very element which makes it judicial. Such a statute is not *due process of law*" as guaranteed by the Constitution of the United States. *Cooley*, Const. Lim., 425; *Rice on Evidence* (criminal), section 290; *Cummings* v. *State of Missouri*, 4 Wall. 328; *Zeigler* v. *R. R. Co.*, 58 Ala. 594; *Sullivan* v. *City of Onedia*, 61 Ill. 248; *State* v. *Divine*, 98 N. C. 783; *Birmingham Mineral R. R. Co.* v. *Parsons*, 13 So. Rept. 604; *Ah. Jows case*, 29 Fed. Rept. 181; *Toledo, Wabash & Western R. R.* v. *City of Jacksonville*, 67 Ill. 40; *Chicago and Alton Railroad Co.* v. *The People*, 67 Ill. 23; *Dartmouth College* v. *Woodward*, 4 Wheat. 581; *People* v. *Lyon*, 27 Hun. 180; *People* v. *Clipperly*, 37 Hun. 320; *Anderson* v. *St. of Ohio*, 7 Ohio 255; (Part 2d).

By Article 5 of the Declaration of Rights "the Common Law of England, and a trial by jury according to the course of that law," is guaranteed to the citizen of this State. The statute in question nullifies that law and its very principles.

It is not necessary to hold that the Act is unconstitutional, unless it is construed to mean that the mere possession of policy papers is a crime; and that the defendant cannot show in his defence that he did not know the character of the papers found in his possession, which was the evidence offered by the defendant in this case. It is not

claimed that the State is bound to prove guilty knowledge on the part of the defendant; the contention is that the defendant should have been permitted to prove the want of knowledge. "The common law requires a concurrence of act and intent to constitute a crime, and a statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with the act; a case of honest mistake of facts will thus be excepted out of a general statutory prohibition." *Bishop, Statutory Crimes*, 136. There are various kinds of criminal enactments. First, there is the statute making it a crime to do an act with a certain intent, as assault with intent to kill; here proof of the intent is specified in the statutes, and is required to be shown to the jury. Second, there is an enactment which requires no particular intent, but yet the jury must be satisfied that the act was prompted by a guilty mind. These statutes contains the words feloniously or unlawfully. Here the defendant is guilty, although he may not have intended to do the prohibited act, provided the thing that he intended to do was immoral or illegal. *Com. v. Elwell*, 2 Metcalf, 190. The third class embraces those statutes where the act, otherwise indifferent, is made a crime when done knowingly or wilfully. Passing bad coins is an example of this class. In these cases, the prosecution should give some proof tending to prove the knowledge on the part of defendant.

The fourth class are those which provide if anyone does such-and-such act, he shall be liable, without words denoting knowledge or intent. In this class, no proof is required on the part of the prosecution, that the defendant did the act knowingly. His guilt is inferred from proof of the act. But the absence of the words " knowingly or wilfully " does not prevent the defendant from proving to the satisfaction of the jury that the *mens rea* to be *prima facie* inferred from his doing the prohibited act, did not, in fact, exist. A statute against disturbing public worship, could not be enforced against a person, who rushes into a church and yells fire,

and thereby saves the congregation from injury ; yet, he interrupts divine service.   Now, suppose he believed the church was on fire, when it was not, should he be prohibited from proving to the jury that he believed in the existence of a fact, which, if true, would be a proper. defence ? JUDGE HAWKINS (*Tolson's case*, 16 Cox, C. C. 650), says : " There must be proof to satisfy a jury that there was a criminal mind or *mens rea* in every offence really charged as a crime.   In some cases the proof of the commission of the act may, *prima facie*, either by reason of its own nature, or by reason of the form of the statute, import the proof of *mens rea*.   But even in those cases it is open to the prisoner to rebut the *prima facie* evidence, so that if the jury are satisfied that there was no criminal mind or *mens rea*, there cannot be a conviction."   Under the English Act against taking females from the control of their guardians, it is permitted to the prisoner to show that he did not know that the girl had a guardian, and that he took her away with good motives and in order to protect her from evil.   Now, the Act says nothing about taking away a girl knowing that she had a guardian.

To these four classes there must be added a fifth, although these enactments are in nature of civil remedies, enforced by criminal procedure.   Ignorance of facts or good motive is no excuse, as conclusive guilt is proven by showing that the defendant committed the prohibited act.   These enactments generally apply to persons who undertake to do something from which a profit or advantage is derived.   No one is obliged to sell milk, but if he does sell it he must see to it that it is pure.   *Com.* v. *Waite*, 11 Allen, 265.   Under this head comes offence against the revenue laws and those laws regulating the sale of liquor ; regulating certain occupations; as keeping billiard saloons and hotels ; laws regulating the conduct of persons using public places, and laws against libel or obscene publications.   Numerous examples under this head are set forth in 3 *Greenleaf*, section 21, and in *Carroll's case*, 63 Md.   But in all these cases to a certain ex-

tent, the defendant is undertaking to do some act which is a benefit to himself.

We claim that the law under which the defendant was convicted comes under the fourth class. Not under the first, because the statute is silent as to the intent; nor under the second, since law does not use the words unlawful or felonious; nor under the third, as the Act does not contain the word knowingly. It cannot be placed under the fifth class, since the mere possession of a piece of paper of the kind offered in evidence can work an injury to no one, any more than the possession of a counterfeit note or a bad coin, unless the possessor intended to use it as genuine. The defendant derived no profit or advantage by carrying the policy papers. We contend then that there should not have been a conviction in this case unless the Court was satisfied after hearing the evidence on both sides that there existed a guilty mind; but by a guilty mind we do not mean a wicked mind, no matter how praiseworthy the defendant's motives may have been, what prompted him to carry the papers, yet he was guilty if he knew the character of the papers, otherwise he was not guilty; and so the defendant should have been permitted to show that he did not know the character of the papers, and reliance is placed on the following authorities: *Reg.* v. *Marsh*, 2 B. & C. 17; *Reg.* v. *Sleep*, 8 Cox C. C. 472; *United States* v. *Schuler*, 6 Mc-Lean, 42; *United States* v. *Pearce*, 2 McLean, 17; *Hean* v. ~~*Garton*, 2 El. & E. 66~~; *R.* v. *Tinckler*, 1 F. & F. 513; *P.* v. *Haw*, 29 California; *Fowler* v. *Padgett*, 7 T. R. 509; *R.* v. *Prince*, 13 Cox C. C.; *R.* v. *Tolson*, 16 Cox C. C.; *C.* v. *Martin*, 17 Mass. 362; *Hopton* v. *Thornhill*, 9 Law Times Report; *United States* v. *Beatty*, 1 Hempt; *Church of Holy Trinity* v. *United States*, 143 U. S. R. 459.

If the Court had admitted the evidence and believed it, then the defendant was not in possession of the papers, *i. e.*, he did not possess them. To have, is *generic;* to possess, is a species of having. He who possesses has, but he who has, does not always possess. We are masters of what we

possess, but not always of what we have. Two things are required to complete a possession : 1st. That there be an apprehension or taking. 2nd. That the taking be with intent to possess (*animus possidendi*). *Brantly, Personal Property*, sec. 139.

*Harry M. Clabaugh, Attorney-General*, and *Henry Duffy, State's Attorney for the city of Baltimore*, for the appellee.

The question at issue is, can a person be indicted for *having in his possession* the prohibited articles appertaining to lottery, and which are mentioned in the indictment? In other words, is a "*scienter*" essential? *Wharton's Criminal Law*, volume 1, section 88, says : " When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact is no defence." This statement of the law, of course, presupposes that criminal statutes may be passed which prohibit the doing of certain things irrespective of any intent ; and it is not presumed that this statement will be controverted. *State* v. *Co.*, 13 Md. 187 ; *Cundy* v. *Lacope*, 23 Am. Law Reg. 768 ; *Reg.* v. *Bishop*, 5 Q. B. Div. 259 ; *Reg.* v. *Prince*, 13 Cox C. C. 145 ; *Chisolm* v. *Doulton*, 22 Q. B. Div. 739, 741 ; 4 *Am. & Eng. Enc.* 689.

The lottery law in question was passed in the interest of the morals of the community, and is therefore a valid exercise of the police power of the State. *Stone* v. *Miss.*, 101 U. S. 814 ; *Long* v. *State*, 74 Md. 568. Nor is it apprehended that it will be urged that any such law is in contravention of the 14th Amendment U. S. Constitution, in view of the decisions in *Powell* v. *Penna.*, 127 U. S. 678 ; *Mugler* v. *Kansas*, 123 U. S. 623. " It must always be conceded, of course, that the State can, through its Legislature, by the legitimate exercise of its police powers, pass laws and regulations necessary for the protection of the health, morals and safety of society." *Singer* v. *State*, 72 Md. 466. " The power which the Legislature has to promote the general welfare is very great, and the discretion which that part of the government has in the employment of means to that end is very great." *Powell* v. *Penna.*, 127 U. S. 685.

Nor is there anything extraordinary in this character of statute. In the case of *Ex Parte Holcomb*, 2 Dill. C. C. Rep. 392, we find that Holcomb, having been held to bail by a commissioner, for having in his possession miniature photographs of United States Treasury notes, about the size of a twenty-five cent issue of fractional currency, applied for his discharge on *habeas corpus*, the Court says : "I agree that in cases of counterfeiting and forgery, the intent to deceive or defraud enters into and forms a part of the offence. * * * The making the picture is the unlawful act, and the intent, whether to use or deceive or defraud, has nothing to do with the crime." And when statute does not make knowledge an ingredient, it need not be averred in indictment. *Carroll* v. *State*, 63 Md. 554. We again find the same character of statute in those laws prohibiting persons having in their possession certain game after a given date. *Phelps* v. *Racy,* 60 N. Y. 12 ; *State* v. *Randolph*, 1 Mo. App. 15. Our own Courts have upheld the power of the State to prohibit the sales of liquor to minors, and it does not matter what was the intent or knowledge with which the liquor was sold. *Carroll* v. *State*, *supra.* " Legislature may fix an arbitrary standard and declare that all milk falling below that standard is impure or adulterated, and a person cannot escape, when prosecuted under such statute, by proving that the milk, as given by his cows, fell below such standard, although they were fed upon proper food. *State* v. *Campbell*, 64 N. H. 402 ; 10 *Am. State Reports*, 419 and notes ; *People* v. *Cifferly*, 37 Hun. 324 ; opinion of dissenting Judge approved in 101 N. Y. 634. See also *State* v. *Lewis*, 33 N. E. Rep. 1024 ; *Com.* v. *Murphy*, 165 Mass. 70 ; 12 *Am. Law Rev.* 469.

Boyd, J., delivered the opinion of the Court.

The appellant was indicted in the Criminal Court of Baltimore City for violating the lottery laws of this State. There are five counts in the indictment, to the fourth and fifth of which demurrers were filed which were overruled. The

traverser then filed a special plea to the fourth and fifth counts, which was demurred to by the State and the demurrer sustained. The case was then submitted to the Court on a plea of not guilty and the traverser was found guilty on the fourth and fifth counts, and not guilty on the others. During the progress of the trial he offered certain evidence which was ruled out and an exception was taken to that ruling. Although the rulings of the Court on the several demurrers and on the admissibility of the evidence offered are all before us, the principal questions involved in them are the construction and constitutionality of section 178 of chapter 310 of the Laws of 1894.

The portion of that section with which we are particularly concerned on this appeal is the provision that " if any person shall have in his possession in this State any book, list, slip or record of the numbers drawn in any lottery, whether in this State or elsewhere, or any book, list, slip or record of any lottery ticket or anything in the nature thereof, mentioned in this section, or of any money received or to be received from or for the sale of any such lottery ticket, or thing in the nature thereof as aforesaid (he) shall be liable to indictment and upon conviction shall be, in the discretion of the Court, fined any sum not exceeding one thousand dollars, or shall be imprisoned for a period not exceeding one year, or shall be both fined and imprisoned ; provided, however, that this section shall not apply to any person who may have possession of any of the articles herein mentioned for the purpose of procuring or furnishing evidence of violations of any of the provisions of the laws relating to lotteries."

An examination of our statutes will show numerous efforts on the part of our Legislatures to prevent the lottery business from being carried on in this State. Most of the provisions in our present Code looking to that end, were in the Code of 1860, and some of the statutes therein codified had been passed many years before that date. Under that Code it was and still is a violation of law to draw any lottery,

to sell lottery tickets, policies, certificates or anything by which the vendor or other person promises or guarantees that any particular number, character, ticket or certificate shall, in any event, or on the happening of any contingency, entitle the purchaser or holder to receive money, property or evidence of debt. If any person kept a house, office or other place for the purpose of selling such tickets, policies, certificates, etc., he was subject to a penalty of one thousand dollars, as was the owner of the house or office who permitted it to be used for such purpose. Then section 178 of Art. 27 of the Code imposed a like penalty on any person who brought into this State any such lottery tickets, policies, certificates, etc., and other provisions, with heavy penalties attached, are in the Code looking to the suppression of this great evil, but it still existed. The Legislature of 1894 went a step further and added to section 178 the provision above quoted, whereby the mere possession of the articles named therein is made a crime, unless it be for the purpose of procuring or furnishing evidence of violations of any of the provisions of law relating to lotteries.

The language of this section is too plain to admit of any discussion as to its meaning. When considered in connection with the previous legislation on this subject, it is evident that the Legislature found that the statutes in force were not sufficient to prevent the lottery business in this State, and it was therefore made a crime for any one to have any of the articles named in his possession, unless it be for the same purpose provided for by the statute—procuring or furnishing evidence of violations of the law. It will be necessary then for us to determine whether such legislation is a valid exercise of the powers vested in the State. It cannot now be denied that laws and regulations necessary for the protection of the health, morals and safety of society, are strictly within the legitimate exercise of the police powers of the State ; provided, of course, that such regulations be reasonable. Such laws are not prohibited, either by the Federal Constitution or that of this State.

The cases of *Singer* v. *State*, 72 Md. 464; *McAllister* v. *State*, *Ibid.*, 390; *Long* v. *State*, 74 Md. 565; *Mugler* v. *Kansas*, 123 U. S. 623, and *Powell* v. *Pennsylvania*, 127 U. S. 678, will illustrate the application of the doctrine without encumbering this opinion with the citation of the numerous other decisions on the subject.

If it be necessary to refer to any authority to show that the laws for the suppression of lotteries are regarded by the Courts to be in the interest of the morals and welfare of the people, the cases of *Ballock* v. *State*, 73 Md. 1, and *Stone* v. *Mississippi*, 101 U. S. 814, will suffice to give the views of the Supreme Court of the United States and of this Court on that subject. There probably never was a time in the history of this State when it was more necessary than the present to use all legitimate means to stamp out this and kindred evils which are demoralizing so many who might otherwise be useful and honest citizens. The man that is always looking for greater returns than his investment or efforts justify is generally a useless, if not a dangerous, member of society, and a lottery is said to be "a game in which small sums are ventured for the chance of obtaining a larger value." It is not difficult to see why one given up to that sort of business soon becomes worse than useless to his community. The tendency is to make him idle, and idleness easily begets crime. Families are deprived of the comforts and sometimes necessaries of life, which are due them, because those who should provide them either squander their means in pursuit of such gains, or have had their powers of earning paralyzed by the pernicious habit of this form of gambling.

In view of the disastrous effect on those dealing with lottery tickets, and upon the community where such business is conducted, there can be no doubt about the right of the Legislature to prohibit any one from having them in his possession, if that be reasonably necessary, for the suppression of the evil. As the statute made it a crime to have them in possession, the purpose for which the traverser had

them is wholly immaterial, and inasmuch as the Legislature did not make the crime dependent upon the knowledge of the party as to what the articles were, it was unnecessary to allege in the indictment that the traverser had them in his possession knowingly, wilfully or in any other words that would impute knowledge of the fact that they were some of the articles prohibited by the law. The allegations in the indictment were clearly sufficient.

But it is contended that if that be conceded, the effect of the statute was simply to shift the burden to the traverser and he could still prove that he did not have knowledge of what the articles were, and hence was not guilty of a viola-tion of law, and that if the statute must be so construed as to deprive him of that right, then it is in conflict with the Constitutions of the United States and of this State. This question was intended to be raised by the special plea filed and the offer of testimony stated in the bill of exceptions. The plea alleges that the defendant "was in possession of policy books and slips, as stated in said indictment, but also says that he is in no way engaged in the policy business and that he was not aware that the papers, books and other articles which were found in his possession were policy or lottery slips ; that the said articles were given to him to carry to a certain place, and that he was then taking them to that place without knowing what said articles were." The proffer of evidence, as stated in the bill of exceptions, was "that said articles were given to him by a man who asked him to deliver them to another man ; and that he did not know what said articles were and had no knowledge that they were policy books or anything connected with said business."

It would, of course, be no excuse if the traverser did not know that the law prohibited the possession of these articles. He is on the contrary presumed to know that it did. Would, then, his ignorance of the fact that what he had in his pos-session were policy books and slips excuse him? It is argued that to hold it would not, might result in the con-

viction and punishment of innocent people—that some one might find on the street a book or list of lottery tickets and not know what it was, but be convicted simply because he had it in his possession. We are not informed by the record how the books, lists, slips and records named in the indictment are made and what they embrace, but in the supplemental brief the learned counsel for the traverser have undertaken to explain them, and we cannot imagine how any one finding either of them on the street would be induced to take it into his possession unless he knew what it was, for it seems to be merely a collection of figures and letters so arranged as to be utterly unintelligible to any one not learned in the business and to an innocent person would certainly not be suggestive of any value. If any one be so unfortunate as to find one, and whilst satisfying his curiosity as to what it is a police officer overtakes him, it will be time enough to determine whether he had it in his possession within the meaning of the statute. But if after a person has undoubtedly gotten into his possession one of the prohibited articles he is to be permitted, notwithstanding the language of the statute, to prove that he found it, or did not know what it was, it will make the statute practically useless, for if he swears that such was the case it will generally be impossible for the State to prove the contrary, and will be a great temptation to perjury, not only to the accused, but to others who might come to his assistance. If a reputable person satisfies the prosecuting officer that he came into possession of it in an innocent way, it is not likely the prosecution would be continued, or if the Court be informed of such facts it could take it into consideration in imposing the penalty, and could fine him fifteen cents or less, which would relieve him of the costs. Courts can and frequently do consider facts in imposing penalties that would not bar a prosecution. If, for example, the Court is satisfied that the accused was ignorant of the statute under which he was arrested, and if prior to the passage of the statute, what is therein prohibited was not unlawful, the

Court might take the fact that he was ignorant of it into consideration in passing sentence, but still he could be lawfully convicted. So far as the justice of the case is concerned, it would not be more inequitable to punish one for having in his possession what is prohibited, when he did not know that he had it, than to punish him when he did not know it was prohibited, although he knew he had it. But he is presumed to know the law and is therefore punished for its violation, although only unlawful because the statute says so, and why should he not be presumed to know that he had what the law prohibited from being in his possession ?

In *State* v. *Baltimore and Susquehanna Steam Company*, 13 Md. 181, the statute under consideration provided " that it shall not be lawful for any slave to be transported on any railroad, or on any steamboat, etc., without a permission in writing from the owner of such slave." The defence was that the company, or its agents, had no knowledge that the negro was on board and had no intention to violate the law, but the Court held that the liability could be enforced without reference to such circumstances. TUCK, J., in delivering the opinion of the Court, said, "If the Legislature deemed it expedient in view of the grievance complained of to hold persons responsible for transporting negroes, whether they were instigated by a criminal intent or not, they had the power to do so. Such acts may produce mischief in individual cases, but the inconvenience and injury would be much more general if in every case of this kind the party charged could defend himself by offering evidence that he did not know the negro was on board of the boat, and that reasonable diligence had been used to prevent such persons from coming on board. The law would scarcely afford any protection to slave owners." In *Carroll* v. *State*, 63 Md. 551, this Court said, " as ignorance of the existence of such law will not excuse, so also ignorance of a fact necessary to be known to avoid a violation of law will not excuse." In that case there are quotations from 3 *Greenleaf on Evi-*

*dence,* section 21, that " where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted, without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation." Again, " such is the case in regard to fiscal and police regulations, for the violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted ; for the law, in those cases, seems to bind the party to know the facts and to obey the law at his peril." The Court refers to a note in Greenleaf where the rule " is said to apply to the sale of any articles, the sale of which is prohibited, and it has been held to be no excuse that the vendor did not know it was a prohibited article." Some of the cases cited in that opinion are very applicable to this case.

Laws of this character have been sustained in numerous decisions, some of which were much more likely to work hardship in individual cases than this statute. In *ex parte Holcomb,* 2 Dill., C. C. Rep. 392, the defendant was held liable for having in his possession miniature photographs of United States Treasury notes. Laws prohibiting persons from having game in their possession during specified periods have generally been upheld, although the decisions have differed as to whether the statutes applied to game received from beyond the State prohibiting the possession. *Dickhaut* v. *State,* decided by this Court at the present term—*ante* p. 451 ; *Phelps* v. *Racey,* 60 N. Y. 12 ; *State* v. *Randolph,* 1 Mo. App. 15 ; *Roth* v. *State,* 51 Ohio St. 209 ; *Magner* v. *People,* 97 Ill. 320, and other cases cited in *Dickhaut* v. *State, supra.*

Some of the cases construing statutes against carrying concealed weapons, regulating the sale of intoxicating liquors, oleomargarine, milk, etc., might be cited as tending to sustain the position taken by the State in this case, but it is unnecessary, as many of them can be found in the note to section 21 of 3 *Greenleaf on Evidence* (15th Edition).

It is proper to say, however, that such statutes are dealing with articles that may under certain circumstances and conditions be lawfully used, yet the Supreme Court of the United States and other Courts in numerous cases have held that the articles could be seized and destroyed by the proper authorities on the principle that the constitutional right of the individual to hold property is subject to those reasonable regulations which are necessary for the common good and general welfare—especially such as affect the health and morals of the people. The policy books and slips found in the possession of the traverser could only be put to one legitimate use in this State—procuring or furnishing evidence of the violations of the lottery law, and it is not contended he had them for this purpose.

But it is contended that the statute deprives the accused of the right of trial by jury and of his constitutional guarantee that he be not deprived of his liberty without due process of law. But the fallacy of the argument is in assuming that it does interfere with those rights. He had the perfect right to prove either that the articles charged in the indictment were not found in his possession, or that those found were not such as the law prohibited him from having. That is the issue made by the statute. It does not deprive him of the presumption of innocence to which he is entitled, but it does make it a crime for him to have in his possession that which is of no lawful use in this State and which injuriously affects the morals and interferes with the welfare of the people. And it is evident that the statute has made the mere possession of the articles a crime because that is the most effectual way to break up the lottery business. The importance of placing the construction we do on the law could not be better illustrated than by what we find in this case and that of *Edward McNeal* v. *State*, which were argued together. The pleas and the evidence offered in the two cases are identical. It may be possible, even if not very probable, that both received the forbidden articles under exactly similar circumstances, but if that be so, it looks

as if those engaged in the business have for the purpose of shielding themselves and avoiding detection in the delivery of them, resorted to this method of doing so. If the police authorities ascertain who the agent for selling the tickets is, he might be detected in delivering them, so he would call some one to his assistance and, according to the contention of the appellant, if the latter does not know what they are, but they are simply " given to him by a man who asked him to deliver them to another man," then he cannot be convicted, although he have his pockets full of some of the articles prohibited by law from being in the possession of any one. Such a construction of the law would render its enforcement very difficult, if not impossible. It is safer to give the language of the Legislature its ordinary meaning and construe it to mean what it says. We do not fear that the innocent will thereby suffer, but if there be any such danger it is for the Legislature and not for the judicial branch of the government to correct any defects that may be found, from experience, to exist in the statute, and we find no such objection to it as would give the Court the right to declare it invalid. The judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided April 1st, 1897).