THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v*. PLÁ-
CIDA MANTILLA RODRÍGUEZ, known as PLÁCIDA ROSA MA-
CHADO, Defendant and Appellant.

No. 14275. Argued February 2, 1950.—Decided March 17, 1950.

36

*Luis A. Archilla Laugier* and *José E. Bosch Roqué* for appellant.
*Vicente Géigel Polanco, Attorney General, J. Rivera Barreras,
Fiscal of the Supreme Court,* and *Fernando Fornaris, Jr.,
Assistant Fiscal,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendant was charged with a violation of § 4 of Act No. 220, Laws of Puerto Rico, 1948, known as the *Bolita* Act. She was convicted and sentenced to six months in jail. She has appealed, assigning five errors.

I

The first assignment is that § 4 is unconstitutional. According to the defendant, § 4 makes it a crime to possess any paper, slip, pencil, piece of adding machine tape, etc., which could possibly be used in a *bolita* game; that under § 4 the government is not required to show that the foregoing implements, which are susceptible of innocent use, were actually used or were to be used in a *bolita* game; and therefore that § 4 is so vague and indefinite that it violates the due process clause of the Organic Act, 48 U.S.C. § 737.[1]

---

[1] Section 4 of Act No. 220 reads in part as follows: "Any person caught carrying or transporting or who has in his possession for any reason any *papeleta,. billete,* ticket, note-book, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipul,* combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games *or* connected with the practice thereof, shall be guilty of a public offense . . ." ("or" italicized by us).

It is familiar doctrine that the due process clause requires that a statute be definite and certain. "The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. The crime 'must be defined with appropriate definiteness.' *Cantwell* v. *Connecticut*, 310 U.S. 296; *Pierce* v. *United States*, 314 U.S. 306, 311. There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, *Lanzetta* v. *New Jersey*, 306 U.S. 451, or in regard to the applicable tests to ascertain guilt." *Winters* v. *New York*, 333 U.S. 507, 515–16.[2]

If § 4 meant what the defendant says it means, it would run afoul of the due process clause because it would fail to establish a certain and definite test to ascertain guilt. As thus construed, it would be so broad in scope, indefinite and vague that both (1) the innocent possession of intrinsically harmless objects such as pencils and slips with ordinary numbers written on them and (2) the reprehensible possession of the same objects in connection with an illegal *bolita* game, would be equally criminal. But "It is not permissible to enact a law which in effect spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrong-doers also may be caught." *Fairmont Co.* v. *Minnesota*, 274 U. S. 1, 10. To permit such a statute to stand would be to violate the mandate of the *Winters* case that (p. 520) "Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained. *Herndon* v. *Lowry*, 301 U.S. 242, 259."

---

[2] *United States* v. *Petrillo*, 332 U.S. 1; *Cole* v. *Arkansas*, 338 U.S. 345, 354; *Gorin* v. *United States*, 312 U.S. 19; *Champlin Rfg. Co.* v. *Commission*, 286 U.S. 210; *Connally* v. *General Const. Co.*, 269 U.S. 385; *United States* v. *Cohen Grocery Co.*, 255 U.S. 81.

See Rottschaefer on *Constitutional Law*, pp. 765–67; 62 Harv.L.Rev. 77; 22 So. Calif.L.Rev. 298; 96 U. of Pa.L.Rev. 889; 33 U. of Va.L.Rev. 203; 35 Calif.L.Rev. 594; 29 Calif.L.Rev. 548; 45 Harv.L.Rev. 160.

■ The proposition that § 4 makes it criminal to possess innocent objects and is therefore unconstitutionally vague is not new. It was made in *People* v. *De Jesús*, 70 P.R.R. 36, where we disposed of it in the following language (pp. 40–41):

"The interpretation suggested by the appellant to the effect that the mere act of carrying a paper or a blank notebook constitutes a violation of § 4, is unreasonable. No court would construe the statute in that way.

"If we adhere to the language of § 4, we get the impression that to merely carry, transport, use or possess any implement *which may be utilized* for the unlawful games of the *bolita, bolipool*, etc., constitutes a violation of the Act. The intent of the Legislature in using the phrase 'which may be utilized' was not to prohibit the carrying, using, transporting or possessing any object susceptible of innocent use. Its intention was to prohibit the carrying, using, transporting or possessing those objects when they have been utilized or are being utilized in connection with such games."

The defendant nevertheless contends that the *De Jesús* case was incorrectly decided and should be reversed. His position is that the language of § 4 is plain and unambiguous and that this Court cannot rewrite it under the guise of interpretation in order to save its constitutionality. To do so, he argues, would be for us to invade the prerogatives of the Legislature and to violate the doctrine of separation of powers.

However, we do not agree that § 4 plainly provides on its face that mere possession of objects which are susceptible of innocent use constitutes a crime. As we pointed out in the *De Jesús* case, this may be the first impression which is gathered from a casual reading of § 4, isolated from the other provisions of Act No. 220. But we think the intention of the Legislature to convey a different meaning by this language becomes manifest when § 4 is examined carefully in the light of several guides to statutory construction.

■ *First*—A Section of a statute is read not in isolated fashion but together with the other Sections of the Act in order to ascertain its true meaning and purpose. *United States* v. *Alpers*, 338 U.S. 680; *Roig* v. *Tax Court*, 65 P.R.R. 418, 421, and cases cited.

Section 4 of Act No. 220 does not stand alone. It is a single provision of a comprehensive statute which is designed to stamp out a serious evil in this community. In the other Sections of the statute certain acts other than possession of materials are made violations of these Sections. It is not disputed that the conduct which is thus made criminal by these other Sections must be shown to be connected with a *bolita* game. Indeed, the defendant argues that these provisions in the other Sections demonstrate that the Legislature deliberately omitted the requirement of such a connection from § 4. But we draw a different conclusion from the fact that these other Sections of Act No. 220 prohibit only conduct or acts which are connected with a *bolita* game. We think the Legislature did not mean in § 4 to deviate from the general pattern of the Act. We therefore read § 4 as providing, as in the other Sections, that such a connection must be shown.

■■ *Second*—The word "or" may be read as "and" in a statute if that will effectuate the legislative intent. This is a sound rule of statutory construction because "There has been . . . so great laxity in the use of these terms that courts have generally said that the words are interchangeable and that one may be substituted for the other, if to do so is consistent with the legislative intent." 2 Sutherland Statutory Construction, 3rd. ed., § 4923, p. 451, and cases cited; cases cited in 50 Am. Jur. § 282, pp. 267–8; see *People* v. *Henneman*, 69 P.R.R. 927.

We think this rule comes into play here by reading the italicized word "or" in § 4, quoted in footnote 1, as "and". As thus read, it becomes clear that if the charge of possession involves materials susceptible of innocent use, conviction can-

not be had under § 4 unless the materials are shown to be connected with the actual operation of a *bolita* game.[3]

The appellant argues that we are not authorized in this case to read "or" as "and", since § 4 is clear on its face. There is, of course, no automatic answer as to when the substitution of "and" for "or" is permitted. The search is always for the legislative intent. But as we indicate throughout this opinion, we think the Legislature intended to require a showing of connection with a *bolita* game when the crime charged was possession of materials which are susceptible of innocent use. Under those circumstances, the cases permit the substitution of "and" for "or".[4]

■ *Third*—Even a criminal statute is "to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose."[5] Applying this rule to the present case, we cannot believe the Legislature intended to

---

[3] In stating in the *De Jesús* case that the Legislature intended to prohibit possession of implements "when they have been utilized or are being utilized in connection with such [*bolita*] games", we did not, as the appellant contends, inject the quoted clause into § 4. What we were in effect doing—and we now do so explicitly—was to read the italicized word "or" as "and".

[4] The courts have also refused to be confined by the seemingly literal language of a statute in other situations where there was room for construction and where literal application would defeat the manifest intent of Congress. *United States* v. *Alpers, supra; Quiñones* v. *United States*, 161 F.(2) 79, (C.A. 1st, 1947); *Rullán* v. *Buscaglia*, 168 F.(2) 401 (C.A. 1st, 1948), cert. denied, 335 U.S. 857; *Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418; *Tugwell* v. *District Court*, 64 P.R.R. 213; *Ballester* v. *Court of Tax Appeals*, 61 P.R.R. 460, 476–77; *Ballester* v. *Court of Tax Appeals*, 60 P.R.R. 749, 759; *Compañía Popular* v. *Unión de Empleados*, 69 P.R.R. 167, 177, footnote 2; *People* v. *Tirado*, 69 P.R.R. 361; *Sucesión de Giusti Inc.* v. *Tax Court*, 70 P.R.R. 109, 126, footnote 9.

[5] *United States* v. *Katz*, 271 U.S. 354, 357; *Adams* v. *New York*, 192 U.S. 585, 599. See also *U. S.* v. *Amer. Trucking Ass'ns.*, 310 U.S. 534, 543; *Armstrong Co.* v. *Nu-Enamel Corp.*, 305 U.S. 315, 332–3; *Sorrells* v. *United States*, 287 U.S. 435, 446; *Singer* v. *United States*, 323 U.S. 338; *United States* v. *Giles*, 300 U.S. 41; *Haggar Co.* v. *Helvering*, 308 U.S. 389, 394; *Helvering* v. *Hammel*, 311 U.S. 504, 510–11; *Lau Ow Bew* v. *United States*, 144 U.S. 47, 59.

declare as criminal acts which are innocent *per se;* namely, that it shall be a crime under § 4 to possess wholly innocuous materials, such as pencils and adding machine tape, not shown to be related to or connected with a *bolita* game. Such a dubious construction of a criminal statute should not be made unless the language of the statute compels it. And we are not prepared to say that the language of § 4 compels this unreasonable and absurd result. Rather we are satisfied that the Legislature meant to provide that possession of such otherwise innocent objects shall be criminal only if they are connected with an illegal *bolita* game.

*Fourth*—"The rule, often announced, that criminal statutes must be strictly construed does not require that the words of an enactment be given their narrowest meaning or that the lawmaker's evident intent be disregarded." *United States* v. *Giles,* 300 U.S. 41, 48; *Singer* v. *United States,* 323 U. S. 338, 341–2; *United States* v. *Alpers, supra.*[6]

The important thing under this approach is not to construe the statute either narrowly or broadly, but rather to gather from its language the legislative intent. This is merely another way of saying that no rule of construction may be used to defeat the obvious purpose of legislation. In fact, in this particular case we are following the rule of strict construction of penal statutes, as we are reading the statute more narrowly than the appellant. But we do so not because of that rule of strict construction but because we believe that is what the Legislature intended. In short, no rule, including this rule of strict construction, requires "rejection of

---

[6] In its most recent restatement of this rule in the *Alpers* case, the Supreme Court said at p. 681: "We are aware that this is a criminal statute and must be strictly construed. This means that no offense may be created except by the words of Congress used in their usual and ordinary sense. There are no constructive offenses. *United States* v. *Resnick,* 299 U.S. 207, 210. The most important thing to be determined is the intent of Congress. The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress. *United States* v. *Raynor,* 302 U.S. 540, 552."

that sense of the words which best harmonizes with the context and the end in view." *Gooch* v. *United States*, 297 U.S. 124, 128; cases cited in footnote 4.

*Fifth*—If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of the courts to adopt that construction which, without doing violence to the fair meaning of the language, will render it valid. *Wong Yang Sung* v. *McGrath*, 339 U. S. 33; *Rescue Army* v. *Municipal Court*, 331 U.S. 549, 569; *Screws* v. *United States*, 325 U.S. 91, 98, and cases cited; *Fox* v. *Washington*, 236 U.S. 273; *Central Aguirre* v. *Tax Court*, 64 P.R.R. 257, 263; *Tugwell* v. *District Court*, 64 P.R.R. 213; *Ex parte Boneta et al.*, 39 P.R.R. 142, 154; see *General Motors Acceptance Corp.* v. *District Court*, 70 P.R.R. 898. In the instant case the defendant would have us construe § 4 in a manner which would make it palpably unconstitutional. We prefer to follow the salutary rule of interpreting § 4 more narrowly and thereby sustaining its constitutionality.

As already noted, the defendant protests that there is no room for application of this—or any other—rule of statutory construction. Her theory is that § 4 is plain and unambiguous and "may not be distorted under the guise of construction . . .". *United States* v. *Alpers, supra*, p. 681. In support of this argument, he cites, among others, the case of *Yu Cong Eng* v. *Trinidad*, 271 U.S. 500.

The *Yu Cong Eng* case involved the constitutionality of a statute of the Philippines which prohibited merchants from keeping their "account books in any language other than English, Spanish, or any local dialect." The Supreme Court of the Philippines upheld the constitutionality of this statute, as applied to Chinese merchants doing business in the Philippines, by reading it as requiring the keeping in the named languages of such account books as are necessary for tax purposes. The Supreme Court of the United States reversed this judgment. It held that the plain terms of the Act pre-

cluded the construction placed on it by the local court. It went on to say that instead the statute flatly prohibited keeping account books in Chinese and was therefore unconstitutional.

We think the *Yu Cong Eng* case is distinguishable. In the first place, the Section of the statute involved in that case consisted of a single, simple sentence. There was no room for construction, as the statute plainly prohibited the keeping of all account books in languages other than those listed therein. Secondly, the interpretation of the Philippine Supreme Court improperly replaced a definite prohibitory provision with an indefinite and vague mandatory provision. That is to say, even if the language of the statute were susceptible of the construction placed on it by the Philippine court, the statute as read by the latter court was too vague and indefinite to meet the requirements of due process.

Neither of these two considerations exist here. We indicate throughout this opinion our view that we are justified in reading § 4 contrary to its seemingly literal terms, in view of its language, its history, the remainder of the Act, and the nature of the subject-matter. And even more important, we have not, as the Philippine Supreme Court did, attempted to replace a definite with a vague and indefinite standard; on the contrary, our interpretation of § 4 avoids the danger of a vague and indefinite standard, which applies equally to innocent and reprehensible acts, by finding in § 4 a certain and definite standard of guilt.[7]

We recognize that the five rules just discussed are only aids to statutory construction, and like all such guides may not be utilized to defeat the intent of the Legislature. *United States* v. *Alpers, supra; Bowie* v. *Buscaglia, Treas.*, 63 P.R.R. 525; *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R.

---

[7] The *Yu Cong Eng* case itself points out that (p. 518) "it is the duty of a court in considering the validity of an act to give it such reasonable construction as can be reached to bring it within the fundamental law." That is what we think we have done here.

870, 881. But we think they may all be properly invoked in this case in support of the conclusion that the Legislature intended in § 4 to provide that possession of otherwise innocent objects constitutes a crime only if these objects are shown to be connected with a *bolita* game.

 There is a final contention of the defendant as to the meaning of § 4 which warrants some discussion. She argues that the legislative history of Act No. 220 reinforces her contention that § 4 plainly provides on its face that mere possession of objects which are susceptible of innocent use constitutes a crime. Her theory is that § 4 of Act No. 25 of 1935 made it a crime to transport such implements "knowing that the same are used for the illegal games of *bolita*. . .", and that thereafter the Legislature deliberately eliminated this language in § 4 of Act No. 220 of 1948 in order to avoid the difficulty of establishing violations of § 4 of Act No. 25, as interpreted by our cases.[8] According to her, we cannot exercise legislative functions by "repealing" the 1948 Act and "reviving" the 1935 Act.

It is true that our earlier cases on which the defendant relies in making this point discussed the requirement of connection with a *bolita* game. But they did so only to show that conviction for *operation* of such a game could not be had without showing such a connection. That is obviously true; but it has no reference to the problem of whether the 1948 Act, which for the first time makes possession a crime, did or did not provide that for possession of apparently innocuous materials to constitute a crime, such possession must be shown to be connected with a *bolita* game.

The cases referred to contain no discussion of the requirement that some connection with a *bolita* game must be shown on a charge of possession. On the contrary, those cases, in exposing one of the weaknesses of the 1935 Act, indicate that possession of *bolita* materials was not an offense under the

---

[8] *People* v. *Vega,* 67 P.R.R. 725; *People* v. *Toro,* 66 P.R.R. 681; *People* v. *Salabarría,* 57 P.R.R. 128; *People* v. *Estronza,* 57 P.R.R. 880.

earlier statute and that, in the absence of a showing of transporting of *bolita* materials or operation of a *bolita* game, conviction could not be had thereunder. The Legislature therefore undertook in the 1948 Act to remedy this defect: for the first time possession of *bolita* materials was made a crime. But we find nothing in the language of our cases interpreting the 1935 Act or in Act No. 220 of 1948 which demonstrates that the Legislature meant, in making possession an offense, to forego the requirement that possession of materials which are susceptible of innocent use must be shown to be connected with a *bolita* game.

In conclusion, we take judicial notice that the operation of *bolita* games in Puerto Rico is a serious evil. The Legislature has chosen to legalize some forms of gambling. *People* v. *Escambrón Beach Club*, 63 P.R.R. 731, 748–749; Act No. 221, Laws of Puerto Rico, 1948. But it has recognized the dangers and corrupting influence of the playing of *bolita*, a game in which racketeers prey on our poorer classes. Act No. 220 represents a laudable attempt to deal effectively with these illicit activities. The Supreme Court has told us that it "goes far" to uphold such statutes.[9] We think we have followed that mandate here.

We also think it appropriate to point out that once we have concluded that § 4 requires a showing that the materials involved were connected with a *bolita* game, the constitutional problem vanishes. The defendant does not contend that the statute as thus construed violates due process. She argues only that it cannot be so read; that it must be read as she

---

[9] "This Court goes far to uphold state statutes that deal with offenses, difficult to define, when they are not entwined with limitations on free expression [citing in the footnote, *Omaechevarría* v. *Idaho*, 246 U.S. 343; *Waters-Pierce Oil Co.* v. *Texas*, 212 U.S. 86]. We have the same attitude toward federal statutes [citing in the footnote, *United States* v. *Petrillo*, 332 U.S. 1; *Gorin* v. *United States*, 312 U.S. 19]. Only a definite conviction by a majority of this Court that the conviction violates the Fourteenth Amendment justifies reversal of the court primarily charged with responsibility to protect persons from conviction under a vague state statute." *Winters* v. *New York*, 333 U.S. 507, 517–18.

construes it; and that as thus interpreted it is unconstitutionally vague. But since we disagree with her as to the meaning of § 4, the constitutional question drops out of the case.[9a]

## II

■ The second assignment is that the district court erred in overruling the demurrer to the information. The theory of the demurrer was that the information did not state facts sufficient to constitute a violation of § 4 of Act No. 220 of 1948. The defendant relies on §§ 71, 82, 83, Code of Criminal Procedure, 1935 ed., and *The People* v. *Marini*, 22 P.R.R. 10. She contends the information was fatally defective because it charged that she had in her possession "material" which could be and was used in the illegal game of *bolita*. She asserts that the word "material" is too vague and indefinite as it could conceivably include not only the objects specifically listed in § 4, but also a shoe, a suit, or anything not belonging to the spiritual world.

The Assistant *Fiscal* of this Court concedes that the information could have been drawn in more specific terms. But we agree with him that a person of ordinary intelligence would understand this charge. The word "material" includes the implements specifically named in § 4. Moreover, the generic words "material" and "materials" are frequently used throughout Act No. 220. Indeed, the use of such general terms is made necessary by the ingenious methods used by *bolita* operators to conceal their activities.[10] In view of

---

[9a] In *People* v. *Almodóvar*, decided today, the defendant attacked the constitutionality of § 4. We never reached the constitutional question in that case, as it was decided on other grounds. However, in this case we have carefully considered all the arguments on constitutionality advanced in the brief of counsel for the defendant in the *Almodóvar* case.

[10] See New York Herald Tribune, February 28, 1950, reporting the seizure of booklets purporting to offer spiritual guidance. The booklets contained numbers at the end of the "spiritual message" for each day. These numbers purported to be references and cross-references to passages in the Bible. The police charged they were actually "tip sheets for the numbers game".

the nature of the subject-matter, we hold that the charge of possession of such material was sufficiently definite, for purposes of stating an offense under § 4. The *Marini* case was decided under different facts and a different statute and is distinguishable. If the defendant had desired a more specific description of the material, she could have obtained it by moving for a bill of particulars. *People* v. *Palacios*, 66 P.R.R. 906, 908; *People* v. *Méndez*, 67 P.R.R. 772, 779; *United States* v. *Petrillo*, 332 U.S. 1, 10–11. But she made no such motion.

## III

The third assignment is that the lower court erred in overruling the motion to suppress the evidence obtained as a result of the search of the defendant's house. The appellant makes several attacks on the sworn statement on which the search warrant was based and on the warrant itself. However, the only point worthy of mention is her contention that the warrant was void because it did not recite on its face that it must be executed and returned to the issuing magistrate within ten days after its date.

Section 512, Code of Criminal Procedure, 1935 ed., provides that a search warrant must be executed and returned within ten days after its date. But it does not provide that this shall be recited on the face of the warrant. Nor is such a recital made in § 507, which sets out the form for a search warrant. Under a similar Federal statute, it has been held that it is not necessary to incorporate this provision of law in the warrant itself. *Benton* v. *United States*, 70 F.(2) 24, 26 (C.A. 4th, 1934), cert. denied, 292 U.S. 642.[11] The warrant in this case was actually executed and returned within ten days of its issuance. We therefore hold that under § 512 the warrant was validly issued and executed.

---

[11] In an earlier case, our Court of Appeals interpreted the Federal statute to the contrary. *Giles* v. *United States*, 284 F. 208, 215 (C.A. 1st, 1922). But since the meaning of a local statute—§ 512 of the Code of Criminal Procedure—is involved, we are free to adopt our own rule. *De Castro* v. *Board of Comm'rs.*, 322 U.S. 451.

## IV

 In the fourth and fifth assignments the defendant attacks the weighing of the evidence by the lower court. The testimony shows that three detectives searched the house of the defendant pursuant to a search warrant; that among the things found were lists with numbers of three figures, followed by a dash and another number; that *bolita* is played by betting on a number with three figures; that in a *bolita* list, the first number is the number on which the bet is placed; that the number following the dash is the amount which is bet; and that these lists were *bolita* numbers, as they answered the foregoing description of lists of *bolita* numbers.

The defendant offered no evidence to challenge this testimony. Nor did she refute the proof that *bolita* is played in the manner prescribed. Indeed, we have had so many cases in which this has been established that we can almost take judicial notice that in Puerto Rico *bolita* is generally played by betting on the numbers 000 to 999, keyed to the last three numbers of the lotteries of Puerto Rico or Santo Domingo, and the local racetrack pool, and that *bolita* lists consist of a series of three-figure numbers, followed by a dash and the amount bet on the respective numbers. See, for example, *People* v. *Acevedo*, 70 P.R.R. 534. In the absence of evidence to the contrary, the district court was therefore entitled to conclude that the lists of numbers introduced in evidence could be used for no purpose other than to play *bolita*.

In Part I we upheld the constitutionality of § 4 of Act No. 220 as applied to possession of materials which are susceptible of innocent use on the ground that § 4 requires an affirmative showing that these materials were actually connected with a *bolita* game. But a different question is presented as a matter of evidence where as here the materials are not susceptible of innocent use but are of such a nature that they could be used for no purpose other than to operate a *bolita* game. Under the latter circumstances, a violation of § 4 is established by proof of possession of such materials;

no additional evidence of connection with a *bolita* game is required precisely because the materials themselves establish the said connection.[12] See *Adams* v. *New York,* 192 U.S. 585, 599; *Ex parte McClain,* 134 Cal. 110 (1901); *Ford* v. *State of Maryland,* 85 Md. 465, 41 L.R.A. 551 (1897). *Cf. United States* v. *Rabinowitz,* 339 U.S. 56, decided February 20, 1950, in which the court says (p. 8, slip opinion) "the possession of the forged and altered stamps was a crime, just as it is a crime to possess burglars' tools, lottery tickets or counterfeit money."

The situation is akin to that discussed in *United States* v. *Raynor,* 302 U.S. 540, where the court upheld a conviction under a Federal statute for possession of paper similar to that adopted by the Secretary of the Treasury for the obligations and other securities of the United States. The Supreme Court said that paper found in the possession of the defendant (p. 543) "was not only perfectly adapted for counterfeiting, but it is difficult to conceive of its use for any other purpose." Since the defendant did not dispute the uncontradicted testimony that the lists in question could not be used for anything except a *bolita* game, the testimony in this case was sufficient to show a violation of § 4.[13]

The judgment of the district court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[12] The appellant makes no point of the fact that § 4 of Act No. 220, unlike § 4 of the 1935 Act, contains no provision that the offense must be committed "knowingly". The question of whether accidental or fortuitous possession would be a proper defense under § 4 of Act No. 220 is therefore not before us. *Cf. Screws* v. *United States,* 325 U.S. 91, 96–97, 101–5, 153–57; *People* v. *López,* 67 P.R.R. 585, 591 *et seq; People* v. *Díaz,* 62 P.R.R. 129, 135; *People* v. *Solla,* 66 P.R.R. 902, 905; *People* v. *Vázquez,* 26 P.R.R. 13; Rottschaefer on *Constitutional Law,* pp. 763–4.

[13] (Because the *Romero* case is pending on appeal, the Chief Justice and Mr. Justice Marrero, who join in this opinion, think footnote 13 should not appear herein. The statements therein therefore represent the views of the writer alone.)

*People* v. *Aleja Romero Widow of Ortiz, per curiam,* decided January 17, 1950, involved a somewhat similar problem. In that case we used the following language: "The second and third errors are directed against the sufficiency of the evidence. The essence of appellant's contention is that the mere possession of *bolita* materials is not sufficient. But, as we have

Mr. Justice Todd, Jr., dissenting.

I dissent. The elaborate and extensive opinion of the Court convinces me that we erred in *People* v. *De Jesús*, 70 P.R.R. 36, in attempting to sustain the constitutionality of § 4 of Act No. 220 of 1948, the *Bolita* Act, by inserting therein, by way of interpretation, phrases which the Legislature had expressly eliminated from § 4 of Act No. 25 of 1935. Now it is sought to cure the error committed in *People* v. *De Jesús*, by saying that in that case we did not mean what we said but that we meant to say something different. It seems to me that the whole question is reduced to a word-juggling refrain such as the old Spanish saying that "Where I say say, I do not say say but I say Sam". This time I refuse to concur in that reasoning.[1]

In construing a criminal statute, this Court has ample authority to endeavor to ascertain the true legislative intent,

held in *People* v. *De Jesús*, 70 P.R.R. 36 and *People* v. *Acevedo*, 70 P.R.R. 534, the possession of *bolita* materials which may be used in a *bolita* game constitutes a violation of the Act. And in the instant case the evidence was sufficient in that respect."

The *Romero* case has been appealed to the Court of Appeals for the First Circuit. We therefore think it appropriate to correct any misapprehension that may arise by virtue of the somewhat cryptic language of our *per curiam* opinion in the *Romero* case. In that case, as in the instant case, the conviction was predicated on possession of lists consisting of numbers of three figures, followed by a dash and a number to the right. There as here there was uncontradicted testimony that such lists are used to play *bolita*: the three numbers represent the number played; the number following the dash represents the amount played. In the absence of any testimony to the contrary, the conclusion by the trial court that these lists could be used for no purpose other than to operate a *bolita* game was reasonable and justified. Under these circumstances, as we have seen, conviction may be had under § 4 without additional evidence showing connection with an actual *bolita* game. See also, *People* v. *Acevedo*, 70 P.R.R. 534; *People* v. *Cortés*, 70 P.R.R. 453; *People* v. *Báez*, 70 P.R.R. 578.

[1] It seems only fair to recall that in *People* v. *De Jesús, supra*, we stated that: "The appellant cites no authority to support the alleged unconstitutionality of the Act." In other words, it is really in *People* v. *Almodóvar, ante*, p. 19 and in the instant case, that we have had the benefit of the parties' briefs where the constitutional question is amply and conscientiously discussed.

[2] Three Justices, Black, Frankfurter, and Jackson, dissented and one, Douglas, took no part in the decision of the case.

when approving the Act. But, in my opinion, not to the extent of inserting words which, on the contrary, are not contained in the Act or were expressly omitted by the Legislature, or to change one word for another in order to make criminal an offense that was not clearly and expressly defined. The legislative intent became manifest when it eliminated said words from § 4 of the Act and when it used the disjunctive "or," not only in § 4 but also in other Sections of the Act.

Narrowing the question to this simple aspect of the matter involved, there is no need to cite numberless authorities and adjudged cases in order to reach the inevitable conclusion that courts can not, under the guise of construction, legislate. It is true that at times the courts legislate—"interstitially" as Justice Holmes said—but such is not the case herein. Here this Court is flagrantly legislating, creating a specific offense where the statute, either through inadequate language or because such was the legislative intent, failed to establish an offense, or better still, made punishable criminal as well as innocent acts.

In *People* v. *De Jesús, supra,* our holding was that the intent of the Legislature was "to prohibit the carrying, using, transporting or possessing those objects [enumerated in § 4] *when they have been utilized or are being utilized* in connection with such games." (Italics ours.)

The two italicized phrases are not found in § 4 of Act No. 220 of 1948, which, insofar as pertinent, provides:

"Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements *which can be used for the unlawful games* of *bolita, bolipool,* combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones *which may be utilized or used in said unlawful games* or connected with the practice thereof, shall be guilty of a public offense. . ." (Italics ours.)

Section 4 of Act No. 25 of 1935 (this Act was expressly repealed by Act No. 220 of 1948) on the contrary provided, insofar as material, that:

"Every person caught carrying or conveying any slip of paper, note, ticket, notebook, list of numbers, or implements, knowing *that the same are used for the illegal games* of *'bolita'*, *'boli-pool'*, clandestine combinations related to the *pools* of the hippodromes of Puerto Rico, and clandestine lotteries; and every person who buys them or any other similar ones which are proved to represent any ticket, chance, share, or interest in said illegal games or connected with the playing thereof, shall be immediately arrested, the corresponding complaint to be made. . ." (Italics ours.)

That the words "which can be used" and "which may be utilized or used," contained in Act No. 220 of 1948, do not mean the same as the words "that the same are used" of Act No. 25 of 1935, is beyond any doubt. Nevertheless, in *People* v. *De Jesús, supra*, we said, erroneously, in my opinion, that the intent of the Legislature was exactly the opposite of the express provision of the Act. It is now stated, however, that what we meant to say in that case was not what we said but that "what we were in effect doing—and we now do so explicitly—was to read the italicized word 'or' as 'and.' "

I do not agree. In *People* v. *De Jesús, supra*, nothing was said, argued or decided in connection with our authority to construe the word "or" as the equivalent of "and," as it is used in § 4, *supra*. We merely inserted, by way of construction, certain phrases in said Section which had been expressly eliminated by the Legislature. It is now for the first time, and in order to save the statute from a new attack on its constitutionality, that the construction formerly given is abandoned to give way to a new construction whereby the conjuction "or" is read as "and".

But this change may be made, by judicial interpretation, when the intent of the Legislature is not clearly expressed in the Act. In other words, and insofar as penal statutes are

concerned, they should be narrowly construed, that is, the crime should be clearly established by the legislative intent and not by judicial construction. Even in *United States* v. *Alpers*, 338 U.S. 680, cited in the opinion of the Court, it was held that "The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress. *United States* v. *Raynor*, 302 U.S. 540, 552." The only thing the court did in the *Alpers* case was to refuse to apply the rule of *ejusdem generis* in interpreting the criminal statute involved therein.[2]

I believe that by construing § 4 as it does in this case, the Court is distorting the language used by the Legislature in order to cure the constitutional defect from which it suffers. If the Legislature deliberately eliminated from § 4 the requirement that it was necessary for the implements to be used in the illegal games specified and instead used the words "which can be utilized or used" in said illegal games, and in other Sections of Act No. 220 used the phrase in the alternative,[3] that is, if the direct connection of the implements with the game was eliminated, as a sole requirement, and was replaced by the possibility that they could be utilized or used for the said illegal purpose, it is not within the province of this Court to say, under the guise of interpretation, that the Legislature intended where it used "or", for the latter to be read as if it were "and". The language used by the Legislature is clear and unambiguous. Therefore, the cases cited in the opinion of the Court to the effect that due process of law requires every statute to define a crime clearly and with

---

[3] In § 2, the phrase "*or* which may be used" was added to the phrase "being used." In § 6, the words "that may be used and distributed in the operation of the illegal games" were substituted by the words "which can be *or* is used," and the second paragraph of § 6 reads in part: "which may have been *or* which can be used." That is, these Sections show the creation in the alternative, of two crimes, in using the disjunctive "or". It cannot be logically said that, in § 4, the Legislature intended the "or" to mean "and."

certainty are in point. Cantwell v. Connecticut, 310 U.S. 296; Pierce v. United States, 314 U.S. 306; Lanzetta v. New Jersey, 306 U.S. 451; Winters v. New York, 333 U.S. 507, and cases cited in footnote 2 of the opinion of the Court. Of particular application is the language used in the cited case of Fairmont Co. v. Minnesota, 274 U.S. 1, 10, to the effect that: "It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrong-doers also may be caught," as to permit such a statute to stand would be to violate the mandate of the Winters case to the effect that "Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained."

In my judgment, none of the five rules on statutory construction cited in the opinion of the Court are applicable to this case inasmuch as the language of § 4 is clear and the legislative history of Act No. 220 of 1948 in comparison with Act No. 25 of 1935 shows the true purpose of the Legislature in enacting said § 4. In contradiction to the holding of the Court, I believe that the case of Yu Cong Eng v. Trinidad, 271 U.S. 500, is applicable to the instant case precisely because we are not justified in reading § 4 contrary to its terms in view of its history and the entire context of Act No. 220 of 1948.[4]

I realize perfectly well what it means, from a social standpoint, to declare that § 4 of the Bolita Act is void. However, it is for the Legislature to correct the deficiencies in Act No.

---

[4] These decisions merely reiterate the provision of our own Codes with respect to statutory construction. Thus, § 14 of the Civil Code provides that "When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." And § 388 of the Code of Civil Procedure provides that "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Italics ours.)

220 of 1948, and the courts should not be required to do so under a rule of construction which is equivalent to improper judicial legislation [5] when it is evident from the context of the statute and its legislative history that, by error or inadvertence, the Legislature failed to define clearly the offense and by failing to do so, it jeopardized the liberty of persons who may possess or transport materials entirely innocent but which "could be utilized or used" in connection with the prohibited games.

The judgment should be reversed.

---

[5] I realize that in *Pérez* v. *District Court*, 69 P.R.R. 4, 17, footnote 5, referring to judicial legislation, we said that "It is frequently a semantic device used by those who do not like the result reached by a court engaged in the task of ascertaining the meaning of a statute. Those who find the result more pleasing call it 'judicial interpretation.'" In this case it is not that I do not like but rather that I do not agree with the result reached by the Court, for I think that the opinion is a perfect example of judicial legislation.