# YANCH *v.* STATE

[No. 55, October Term, 1952.]

*Decided January 9, 1953.*

The cause was argued before DELAPLAINE, COLLINS and HENDERSON, JJ.

*Herbert Meyerberg,* with whom were *Joseph Leiter* and *M. William Adelson,* on the brief, for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom were *J. Edgar Harvey,* Acting Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *J. Harold Grady,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a conviction for the possession of lottery paraphernalia. The appellant and her husband, Connie Yanch, were jointly indicted in eleven counts for lottery and bookmaking activities. Connie Yanch was found guilty of lottery violations, including the possession of lottery tickets. He appealed and later dismissed his appeal. Helen Yanch was convicted of the possession of lottery tickets and appeals.

The appellant, 40 years of age, is the wife of Connie Yanch, who owned and operated a tavern at 3401 East Pratt Street, Baltimore. This entire premises at one time was a private dwelling. The first floor has been converted into a tavern. The front room is the bar room which leads through an open archway to a public dining room. In the dining room were tables and chairs and an upright piano. Attached to the wall between the bar room and the dining room was a public telephone. The license for the tavern was in the husband's name. Appellant assisted her husband in the bar and dining

room. She and her husband occupied the second floor as their living quarters, where another telephone was located. Mr. Yanch employed a housekeeper, who also cleaned the tavern.

On February 7, 1952, Sergeant Goldstein, of the Baltimore Police Department, was assigned to observe the premises for suspected violations of the lottery laws. He testified that he went in the tavern and observed "a man take some yellow conventional lottery slips out of a bag. He made some notations on a slip of paper, and he put them back in the bag, and then handed them to Mrs. Yanch, who was sitting beside [him]. Then she said: 'Let's go', and they both walked out of the tavern, and that is the last I saw of them." He said by conventional lottery slips, he meant "the common form slips of paper that is used in lottery business" and he recognized them as such. On cross examination he admitted that he did not obtain any of these conventional lottery slips. He also admitted that he could not see "what was actually written" on these yellow conventional lottery slips.

Seargeant Poole testified that on February 11, 1952, about 12 o'clock noon and accompanied by Officer Taylor and Sergeant Goldstein, with a search and seizure warrant, he went to the premises at 3401 East Pratt Street. When they entered Mr. Yanch was behind the bar. There was a lady in the kitchen and a man sitting at the bar. He told them he had a search and seizure warrant and proceeded to search the place. At about five minutes after noon Mrs. Yanch, the appellant, came in carrying some articles. The officers looked through her pocketbook and found nothing. Mrs. Yanch asked the officer if they desired to search the car, which was not included in the search warrant. She consented to the search and they found nothing there. She cooperated with the officers and forced open a locked drawer, to which she had no key, in the safe in the kitchen. Nothing was found there. Sergeant Poole then went back into the dining room. There was a piano there and on top

of the piano was a large pile of newspapers. He pulled some of the papers down and in between the sheets of the newspapers, about in the middle of the pile, he found three pieces of paper with lottery numbers on them. These were admitted in evidence over objection, against both the appellant and Mr. Yanch. They proved to be lottery slips with writing on them indicating a play of $20.50. One of the pieces of paper on which the lottery numbers were written was the back of an entry blank in a "Miss TV Contest"; another had on its back "Bethlehem Steel Company, Sparrows Point Plant"; and the other was on a small piece of cardboard. These were not conventional lottery slips. The officers also made an extensive search of the upstairs apartment but found nothing.

Martha Taylor said she was supposed to be the housekeeper. She did the light cleaning and the cooking. She cleaned all over the house, including the tavern premises, every day. She admitted that in cleaning the downstairs she picked up newspapers and magazines and placed them on top of the piano. They keep them there to wrap up beer and soda water. Sometimes the newspapers and magazines are picked up on the bar, "sometimes in back of the bar on the ice box and on the tables in the dining room, scattered all around". She said there was nothing to prevent a customer from placing a paper on top of the piano or inserting something in papers which were on top of the piano. Sometimes people in the dining room would take papers down and throw them up there again. She said she did not put the lottery slips in the newspapers and did not see either Mr. or Mrs. Yanch put them there.

The appellant testified that the newspapers are put on the piano every day. She said: "I wrap bottles of beer in them, and sometimes I want to look at maybe news that I have read a day before or week before, I look it up. I just save papers. I save magazines too. I got two hundred magazines I save." She said she never put the lottery slips in the newspapers and never

saw them and that customers had access to the newspapers. She denied that she received a paper bag from anyone on February 7th.

The State is not confined in its proof to the date of February 11, 1952, alleged in the indictment and may show that the offense occurred at any time within the period of limitation of one year, which of course would include the date of February 7, 1952. Code 1951, Article 57, Section 11; *Curry v. State,* 117 Md. 587, 592, 83 A. 1030; *Wilson v. State,* 200 Md. 187, 193, 88 A. 2d 564, 566. The mere possession of lottery tickets is an offense under the statute. *Ford v. State,* 85 Md. 465, 480, 37 A. 172, 41 L. R. A. 551; *Rucker v. State,* 196 Md. 334, 340, 76 A. 2d 572, 574. The appellant contends that the evidence was not legally sufficient to justify the submission of this case to the jury and that her motion for a directed verdict should have been granted. With this contention we agree.

Since the adoption of the amendment to the Maryland Constitution, Article 15, Section 5, effective December 1, 1950, we have the right and duty, when the question is properly submitted, as in the instant case, to pass upon the legal sufficiency of the evidence in a criminal case. In *Edwards v. State,* 198 Md. 132, 83 A. 2d 578, a non-jury case, the question of the sufficiency of the evidence was submitted to this Court. Judge Markell said in that case: "In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. * * * In a criminal case the fact must be shown, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. The difference in degree of proof is ordinarily for the triers of facts." This Court will not in a jury case pass upon the weight of the evidence or decide whether the State has proven its case beyond a reasonable doubt. If there is any proper evidence before the jury on which to sustain a conviction, the motion for a directed verdict

will not be granted. *Shelton v. State,* 198 Md. 405, 412, 84 A. 2d 76, 79, 80. *Auchincloss v. State,* 200 Md. 310, 314, 89 A. 2d 605, 607.

The trial judge in his charge to the jury practically took from them any consideration of the charge against the appellant for possession of lottery tickets on February 11, 1952. He said in part: "I might say this to you in connection with this fifth count which charges both defendants, Mr. and Mrs. Yanch. It is for you to consider whether or not there is any evidence that Mrs. Yanch had lottery tickets in her possession as well as for you to consider whether Mr. Yanch had lottery tickets or other evidence of lottery paraphernalia in his possession. Bear in mind that Mrs. Yanch was not the licensee of that tavern. She possibly had some possessory rights in the residence part of that building, but there is no evidence that anything was found in the residence part of the tavern building. There were some tickets or slips found in what was known as the dining room. Mr. Yanch was the proprietor of the tavern and so far as we know of the dining room. There isn't any evidence, as far as I know or can recall that Mrs. Yanch had possession or an interest in the tavern and the dining room." *Shelton v. State, supra,* where a directed verdict was refused, Shelton was the owner and operator of the bar and grill in which the number slips were found. In *Hayette v. State,* 199 Md. 140, 85 A. 2d 790, where a directed verdict was denied, Hayette was the proprietor of the store, in the rear yard of which the lottery slips were found. In the case at bar, as stated by the trial judge, Mr. Yanch was the proprietor of the tavern and the licensee. There was no evidence that the appellant had possession of, or any interest in the tavern or dining room. There was no more evidence against her on February 11, 1952, than against the housekeeper, Martha Taylor, who said she picked up the newspapers and magazines and placed them on the piano. No indictment was found against Martha Taylor, apparently.

For the purposes of this case, we will assume as true the testimony of Sergeant Goldstein, that on February 7th, 1952, he saw a man, who was not Mr. Yanch, take what he believed to be yellow conventional lottery slips out of a bag, make some notations on a slip of paper and put them back in the bag and hand them to Mrs. Yanch, and that she said "Let's go", and they both walked out of the tavern. However, on cross-examination he admitted that he did not obtain any of these slips and could not see what was written on them. In *Robinson v. State*, 200 Md. 128, 88 A. 2d 310, the officer saw a man walk toward Robinson, who was in a parked automobile at a distance of about twenty-five or thirty feet from the officer, and pass what he believed to be yellow lottery slips to Robinson who was seated in the driver's seat. The officer admitted that at that distance he could not read anything on the slips but from his past experience he knew that they were lottery tickets. We said the following in that case: "There is credible evidence here from which the trial judge could have found that the appellant voluntarily handed the lottery tickets and the bag of money to the Sergeant. Having voluntarily surrendered these, under the authorities above cited these were properly admissible in evidence. It may be that at the precise moment when the officers began the arrest of appellant only on sight of the yellow slips at a distance of from twenty-five to thirty feet their view was not sufficient to inform them that a misdemeanor was being committed in their presence. However, when the Sergeant walked up to appellant's car and immediately saw the lottery tickets in appellant's pocket, and the arrest was completed, and the lottery tickets and money bag were immediately handed to the Sergeant, there was certainly sufficient evidence to inform the officers that a misdemeanor was committed in their view and presence."

Here, there is no testimony as to how much experience Sergeant Goldstein had had in lottery cases, and as to whether he had ever seen lottery tickets before and, if

so, how often. The writing on the slips was never seen. His testimony that the yellow slips he saw were lottery slips is absolutely unconfirmed by seeing anything, writing or numbers, on the slips and by later producing them. We are of opinion that there was no legally sufficient evidence here to support a rational inference that the lottery slips found on the piano on February 11, 1952, were in the possession of the appellant, or that the yellow slips seen by Sergeant Goldstein on February 7, 1952, were lottery slips. Therefore, the motion for a directed verdict for the appellant should have been granted. In so holding we express no opinion as to whether Sergeant Goldstein's observation of the slips was sufficient to justify an arrest. *Griffin v. State,* 200 Md. 569, 92 A. 2d 743, and cases there cited. The judgment will be reversed.

*Judgment reversed.*