# HAROLD McCUEN v. STATE OF MARYLAND

[No. 156, September Term, 1967.]

*Decided February 1, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Howard Norin* for appellant.

*James R. Crook, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barry Frame, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Harold McCuen, the appellant, an inmate of the Maryland Penitentiary, was tried before Judge J. Harold Grady, sitting without a jury in the Criminal Court of Baltimore, on charges of possession and of control of barbiturates. He was convicted

of having a barbiturate under his control and sentenced to a term of nine (9) months consecutive to the sentence for rape which he was currently serving.

On March 3, 1967, Lt. Lyles, a correctional officer at the Penitentiary assigned to narcotics investigation, received information that McCuen was selling secobarbitals, a barbiturate. On the same day he went to McCuen's cell which he alone had occupied for approximately three (3) months. Jerry Hunt, a visiting fellow prisoner, was in the cell with McCuen who was standing to the rear of the cell near the wash bowl. Lt. Lyles asked Hunt to step outside the cell, searched him and found one secobarbital capsule on his person. He then ordered McCuen out of the cell and searched him finding nothing. Lt. Lyles testified that at that time McCuen "appeared to be under some type of stimulant, his speech was impaired and disorderly .staggering like he couldn't maintain his balance too well." Lt. Lyles then instructed Sgt. Nagel, who was in charge of the cellblock, to search McCuen's cell. The search, which immediately followed, produced a packet containing forty secobarbital capsules secreted under the edge of the wash basin.

Sgt. Nagel testified that prisoners are instructed to close their cell doors upon leaving their cell, that closing of the cell door will automatically lock it. There is a security check to insure that cells are locked when the occupant is out. On cross-examination, Nagel stated that it was possible that an inmate assigned to a cell in McCuen's area could enter his cell unobserved if the door was not closed.

McCuen and fellow inmate, Gene Thompson, testified that there were occasions when McCuen's cell was entered by his friend Thompson in McCuen's absence when "the door was closed but not all the way." Thompson also stated that another inmate friend "used to come down there [to McCuen's cell], Mr. Shaney." It was not suggested that Messrs. Thompson or Shaney had any knowledge of the secobarbital capsules.

The only question presented for our determination concerns the sufficiency of the evidence to support the conviction. On these facts we cannot say that the trial judge was clearly erroneous in finding McCuen guilty, Maryland Rule 1086.

In *Hayette v. State,* 199 Md. 140, 144, 85 A. 2d 790, 792 in

discussing a similar subject the Court of Appeals said as follows:

"In the second case appellant's basic contention is that the contents of the paper bag and the cardboard box were not properly admissible in evidence, (a) because there was no evidence to connect them with appellant and (b) because the slips were old, had ceased to be lottery slips and had become mere trash. Whether last month's newspaper is still a newspaper or last month's lottery slip a lottery slip, we need not consider. Assuming that it is not, it is none the less, when found in quantity, evidence of keeping a lottery place in the present or the recent past. Of course, it must be connected with appellant. Mere discovery in a station-house cell after occupancy by defendant, *Sugarman v. State,* 173 Md. 52, 58-59, 195 A. 324, or on the person of the driver of an automobile in which defendant is a passenger, *United States v. DiRe,* 332 U. S. 581, 593-594, 68 S. Ct. 222, 92 L. Ed. 210, is not enough to show guilty connection with defendant.[1] But the evidence of the connection need not be certain evidence of guilt; '* * * probability is the only requirement * * *'. *Goldstein v. State,* 179 Md. 697, 22 A. 2d 471, 472; *Purviance v. State,* 185 Md. 189, 193, 44 A. 2d 474. In the instant case the evidence of connection is sufficient. The yard, no less than the store, was part of appellant's premises. We need not try to guess just how the box and contents got there. Apparently, "someone had blundered." If this evidence was admissible (as we hold it was) the *trial court was not clearly wrong in inferring that it did not reach appellant's premises without his privity or knowledge and in finding him guilty of keeping a lottery place. To prove guilt beyond a reasonable doubt*

---

1. It should be noted that in *Sugarman v. State, supra,* the accused had been thoroughly searched immediately prior to the time he was placed in the cell and that the search of the cell was twenty minutes after his occupancy.

76

> *it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived. Goss v. State,* 198 Md. 350, 84 A. 2d 57, 58." (Italics added)

While the evidence, here, did not amount to proof of guilt to a mathematical certainty, it was sufficient to support the verdict of the trial court. McCuen not only occupied the cell alone, but there was evidence that at the time of the search he was under the effects of some kind of drug and that he was standing close to the place where the barbiturates were found when he first received knowledge that his cell was to be searched. We cannot say that the trial court was clearly wrong in inferring that the barbiturates did not reach their hiding place without McCuen's knowledge and consent.

*Judgment affirmed.*