## EDWARD BARKSDALE *v.* STATE OF MARYLAND

[No. 709, September Term, 1971.]

*Decided June 6, 1972.*

470

The cause was argued before ORTH, THOMPSON and POWERS, JJ.

*Gerald A. Kroop* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Because we recognize the difference between the roles of triers of facts and appellate courts, and the terms of Rule 1086, non-jury cases in which we said that the trial court was clearly wrong in its judgment on the evidence have been rare as was prophesied by the Court of Appeals in *Edwards v. State, Memorandum on Motion for Reargument,* 198 Md. 132, 159-160, and indicated in *Lambert v. State,* 196 Md. 57. This is one of those rare cases. We find that the evidence was not sufficient in law to sustain the convictions of EDWARD BARKSDALE of violations of the narcotics laws.

Barksdale was charged under indictments 733 and 734, Docket 1971, and was jointly tried at a bench trial in the Criminal Court of Baltimore with Amanda Taylor, who was charged under indictments 731 and 732, Docket 1971. Officer Robert Yamin of the Baltimore City Police Department was the only witness at the trial. The court found him to be an expert in the field of unlawful activities pertaining to controlled dangerous substances. He testified that on 9 December 1970 about 7:15 p.m., accompanied by six other officers, he

executed a search warrant on the third floor front apartment of 707 Newington Avenue in Baltimore City. Barksdale and Taylor were on the premises when the police entered. They were advised of "their rights." Neither made a statement at that time. "A search of the premises revealed on the kitchen table a change purse containing eight glassine bags containing a white powder, suspected heroin, later field tested." On analysis by the U. S. Customs Chemist the powder proved to be heroin hydrochloride. The transcript of the proceedings reads:

> "MR. KROOP [defense counsel]: Let the record reflect the Officer has taken out of a purse that has flowers on it, pink and sort of like blue flowers.
> THE COURT: Has material of that . . .
> MR. KROOP: Very well. And it is approximately three by five inches.
> MR. HARLAN [Assistant State's Attorney]: I think what defense counsel is getting at is this lady's purse.
> MR. KROOP: Yes."

Also found on the table was a cigarette case. For the record defense counsel described it as "a yellow cigarette case, two and a half by four inches in dimension and would also be a woman's cigarette case." The court observed that it was "a yellow pouch type cigarette case." In the cigarette case were 20 glassine bags, a set of keys and $47.50. The bags were "folded in a peculiar fashion" and Yamin said, based on his experience, they had been used for the dispensing of heroin. One key fit the front door of the building and another the door leading into the raided apartment.[1] Barksdale and Taylor were the only persons in the apartment at the time of the raid.

---

1. Yamin said: "We gained entrance to the front, first floor, by means of a pretext with another occupant of the building, so it wasn't necessary to tear it down." The door to the apartment proper was forced. "To avoid having any evidence destroyed, we used a large maul and forcibly entered the apartment."

"Mr. Barksdale was wearing a pair of Levi Trousers." The witness did not remember whether or not he had on a shirt. The apartment had one bedroom. There was clothing in the bedroom cupboard. "It was women's clothing and men's clothing. It's a long type closet." It was elicited that before Barksdale and Taylor left in the custody of the police "they put on more clothing which they got from the closet area of the apartment. * * * It was chilly out." No other contraband was found on the premises. "There were no paraphernalia, as far as hypodermic, syringe and needles found in the apartment." Yamin examined Barksdale's arms. There were numerous old and fresh needle marks indicating that "Mr. Barksdale was a user of drugs." Yamin also examined Amanda Taylor's arms. There were numerous fresh and old needle marks showing that she was a user of drugs. It was entered in evidence by stipulation that Miss Taylor was searched at the police station by a policewoman and that 46 glassine bags containing a white powder were found in her vagina. Upon analysis the white powder in the bags proved to be heroin hydrochloride.

On cross-examination of Yamin it was brought out that Miss Taylor admitted she had been an addict for four years. She took approximately eight bags a day. As an expert the officer said this was consistent with the "physical marks found on her arms," but, the officer pointed out, no hypodermic needle and syringe were found in the purse.[2] The State rested.

The defense moved for judgments of acquittal as "to each and every count of both indictments" and the court denied them.[3] The defense rested and renewed its mo-

---

2. On redirect examination the State attempted to get into evidence what Yamin saw with respect to 707 Newington Avenue when he was observing the premises on 9 December 1970. The observations were included in the affidavit on which the search warrant was based. The testimony was received subject to exception and at its conclusion the court sustained objection, apparently on the ground that it was not proper redirect examination.

3. There was an addendum to each of indictments 733 and 734 warning Barksdale that the State intended to prosecute him for

tions. After argument by counsel the court rendered its
verdict:

> "Gentlemen, the thrust of the defense as far
> as Mr. Barksdale is concerned is that the con-
> traband, glassine bags of heroin in one in-
> stance, was found in a purse, which seems to
> this Court to be a lady's purse, or a woman's
> purse, and that the twenty empty glassine bags
> and keys were found in a cigarette case, which
> looks like a lady's or woman's cigarette case.
> Other than its appearance, there is no testi-
> mony actually whose property it was. I am re-
> ferring now to the purse and the cigarette case.
> The purse is the one container which held the
> eight glassine bags, which had the heroin in
> them, and the cigarette case contained the
> twenty empty glassine bags which appeared to
> Officer Yamin to have been used for holding
> some material, saying that it evidently, to his
> mind, was used because of the folding of them
> in an unusual manner, and the Court did see
> they were compressed in an unusual manner.
>
> There is no question that Miss Taylor is
> guilty of possession of heroin in a most unusual
> fashion. Evidently that manner of possession
> was employed to hide the forty-six bags of
> heroin, it being put by her or somebody in her
> vagina and subsequently discovered on exami-
> nation by a policewoman at the Pine Street
> Station.
>
> The evidence, of course, is the evidence
> which was put on by the State. No evidence
> was offered by either of the defendants. Of-
> ficer Yamin testified that Mr. Barksdale and

---

the current offense as a subsequent offender. Barksdale pleaded
not guilty to the addenda upon arraignment at the beginning of
the trial and the State said it was not pressing them. At the close
of evidence offered by the State he also moved for a judgment of
acquittal as to the addenda. The court granted the motion. See
Maryland Rule 713.

Miss Taylor, when they were taken from the apartment, each put on clothes which were in a closet in this apartment. The apartment had one bedroom. There has been no evidence in the case as to who was the legal possessor of the apartment or was the tenant, or for that matter who was the landlord, but the evidence, of course, is that both defendants were in the apartment with a closed door, which door, incidently, was knocked down by the officers in order to make quick entry in an effort to discourage the disappearance of the anticipated contraband.

As far as the amount of heroin is concerned, even though the testimony shows Miss Taylor was an addict and used eight bags a day, which was a statement she made to Officer Yamin, the Court finds no difficulty in reaching a conclusion that this amount of bags could reasonably indicate an intention to distribute same. The recent Legislature passed a law effective July 1st making the trier of the fact the determinant to determine whether or not heroin or any contraband or narcotics is in sufficient quantity to reasonably indicate under all the circumstances an intention to distribute. I reach that conclusion because of the fact the evidence showed there was no paraphernalia on the premises, no hypodermic needles and syringes or any other paraphernalia that is normally used by addicts to administer narcotics. The logical conclusion is that it wasn't used or wasn't held for that purpose in the apartment. If there were evidence of paraphernalia there, then I think the argument could be made by the defense, and properly so, that it was there in that quantity for her own personal use. The absence of the necessary injector makes this Court reach the conclusion all narcotics held in

that apartment at that time was for the purpose of distribution. I think no other conclusion can be reached. So, as far as Miss Taylor is concerned in Indictment 731, the verdict is guilty of the first count, also guilty of the second count and guilty of the third count. * * * The verdict, of course, in 732 is guilty.[4]

As far as Mr. Barksdale is concerned, the Court has a more difficult time. I must admit. * * *

In Indictment 733 as to Barksdale, the verdict is not guilty on the first count, guilty on the second count. * * * Guilty of the third count. Indictment 734, the verdict is guilty."

The only direct evidence pertaining to Barksdale was that he was present in the apartment at the time of the raid, that he was an addict with fresh needle marks on his arms, and that before he was taken out into the chilly night in police custody he put on "more clothing" which was in a closet in the apartment. These meager facts did not show nor was it a rational inference therefrom that Barksdale exercised actual or constructive dominion or control over the heroin and glassine bags[5] found in a lady's purse and a lady's cigarette case on the kitchen table and in Amanda Taylor's vagina, and that he kept or maintained the apartment.[6] *Davis and Green v. State,* 9 Md. App. 48. See *Williams v. State,* 14 Md. App. 619;

---

4. Indictments 731 and 732 are not in the record before us. It would seem that they charged Taylor with the crimes charged to Barksdale by indictments 733 and 734. Indictment 733 charged possession of heroin with intent to distribute (1st count), possession of heoin (2nd count), possession of controlled paraphernalia (3rd count). Indictment 734, comprised of only one count, charged keeping a common nuisance.

5. Code, Art. 27, §§ 287 (a) and (d) ii.

6. By Code, Art. 27, § 286 (a) (5) "common nuisance" means "any dwelling house, apartment, building, vehicle, vessel, aircraft, or any place whatever which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia."

*Killie v. State,* 14 Md. App. 465; *Waller v. State,* 13 Md. App. 615; *Williams v. State,* 7 Md. App. 5. Cf. *Folk v. State,* 11 Md. App. 508 and cases therein discussed. See also *Puckett v. State,* 13 Md. App. 584. We hold the evidence was not sufficient in law to sustain the convictions. *Williams v. State,* 5 Md. App. 450. If the State had legally sufficient evidence to establish that Barksdale was guilty of the crimes of which he was convicted it did not adduce it at the trial here reviewed. We reverse and remand for further proceedings under the directives of *Gray v. State,* 254 Md. 385, 397.

Barksdale also contends that the trial court erred in denying his motion to suppress the evidence. He alleges that the search and seizure by which the evidence was obtained was unreasonable because the search and seizure warrant lacked probable cause for its issuance. The affidavit supporting the warrant recited that the two police officer affiants had received information from an informant shown to be reliable [7] that heroin was being sold at 707 Newington Avenue, third floor. The informant designated by name (James Harris and Peggy Ann Carter) and description two persons who would go to those premises in a taxi-cab. Harris would ring the door bell and on this signal the residents of the third floor front would throw him a key to the house. Harris would enter and purchase heroin. On 9 December about the time specified by the informant the affiants maintained surveillance on the premises, saw a man and a woman drive up in a cab which parked in the 700 block East North Avenue. The man went to 707 Newington Avenue. A key was dropped to him from a third floor window. He entered the house and within several minutes came out and drove away in the cab. The affiants stopped the cab about two blocks away. The man was James Harris and the woman was Peggy Ann Carter, each a known drug addict. Three glassine envelopes containing a white powder were found on

_____

7. Barksdale's counsel conceded in argument before us that the affidavit sufficiently established the reliability of the informant.

Harris. On a field test of the powder it was found to contain an opium derivative. We find that the affidavit showed reason to believe that prohibited drugs were unlawfully concealed in the third floor front apartment of 707 Newington Avenue. *Moore v. State,* 13 Md. App. 711. See *Draper v. United States,* 358 U. S. 307.

> *Judgments reversed; case remanded for further proceedings in accordance with this opinion.*