# GARRISON *v.* STATE OF MARYLAND

[No. 301, September Term, 1973.]

*Decided June 28, 1974.*

124

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael E. Kaminkow, Assigned Public Defender*, for appellant.

*David B. Allen, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court. MURPHY, C. J., dissents.

The appellant, Shirley A. Garrison, following a non-jury trial in the Criminal Court of Baltimore (Sodaro, J.), was convicted (under the first count of an indictment) of possession of heroin, in sufficient quantity to reasonably indicate under all the circumstances an intent to distribute such controlled dangerous substance. Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 286 (a) (1). On appeal she challenged only the sufficiency of the evidence to sustain her conviction. The Court of Special Appeals in an unreported per curiam, *Shirley A. Garrison v. State* [No. 237, Sept. Term, 1973], concluded that the evidence permitted a finding that the appellant had a possessory interest in the

apartment and that she was in joint exclusive control of the contraband heroin under the holdings in *Watson v. State*, 18 Md. App. 184, 196-7, 306 A. 2d 599, 607 (1973). We granted a writ of certiorari.

The appellant was jointly indicted with her grandmother, Nelly O. Reed; the second and third counts charged as well the possession of heroin and of certain paraphernalia, *i.e.*, two (2) hypodermic syringes and four (4) hypodermic needles.[1]

On May 25, 1972, upon the applications and affidavit of Officer Vincent Cole of the Baltimore City Police Department, a District judge issued three (3) search and seizure warrants respectively for (a) a 1969 black and white Oldsmobile sedan, (b) the premises 1525 Leslie Street and (c) the premises 1553 Leslie Street. The applications and affidavit were predicated upon information from an informer — the basis for whose reliability was set forth in the affidavit — who reported that one "Piggy" (Ernest T. Garrison) and his wife "Shirley" were selling heroin from the 1969 Oldsmobile and from the two designated residences; that he had visited the home of "Piggy" and "Shirley" at 1525 Leslie Street where he observed "Piggy" packaging heroin, following which "the wife 'Shirley' took part of the drugs and took them to her grandmother's house and stored them there without the grandmother's knowledge" ; that he had been upon those premises (1525 Leslie Street) on numerous occasions and had there observed heroin and paraphernalia; he further reported having made a purchase of heroin from "Piggy" as he sat in the parked Oldsmobile sedan.

---

1. The husband, Ernest T. Garrison, was indicted in a four (4) count indictment charging him alone with possession of heroin in sufficient quantity to reasonably indicate under all the circumstances an intent to distribute, etc., possession of heroin and two (2) separate counts for the possession of "controlled paraphernalia," respectively, 1350 glassine bags and two (2) hypodermic syringes and four (4) hypodermic needles. An addendum charging him as a "subsequent offender" was also filed. (*See* Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 293 and Maryland Rule 713.) Although indicted singly, his case was joined for trial with that of Shirley A. Garrison and Nelly O. Reed. (Rule 734.) He was convicted of possession of heroin in sufficient quantity to reasonably indicate an intent to distribute and was sentenced to a fifteen (15) year term. The State abandoned prosecution of the addendum.

The affidavit further set forth that the officers arranged for the informant to make two (2) "controlled purchases" of heroin, sending him first to 1525 Leslie Street, where he was admitted by "Piggy" and whence upon his return to his rendezvous with the police stated that he had purchased the glassine bag of heroin from "Piggy" and that "his wife 'Shirley' was on the premises with their two children." The second "controlled purchase" of heroin by the informant was made from the parked 1969 Oldsmobile and [the police] observed a female seated in the automobile with "Piggy." Upon his return to his second rendezvous with the police the informant reported that the two subjects in the Oldsmobile were respectively "Piggy" and "his wife 'Shirley'" and that "Shirley had the drugs down in her blouse."

At the commencement of the trial counsel on behalf of the codefendant Nelly O. Reed filed a motion to suppress, under Maryland Rule 729, based upon the contention that the informant's statement that "Shirley took part of the drugs and took them to her grandmother's house and stored them there without the grandmother's knowledge," was a conclusion without a factual foundation, and could not afford a basis for finding "probable cause" to issue the warrant for 1553 Leslie Street. After considering the affidavit the trial court denied the motion; the State then "withdrew" the affidavit "from any consideration at this point by the court [since it] was only for the motion."

On May 26, 1972, at 8:15 A. M., when Officer Cole, pursuant to the warrant for 1525 Leslie Street, forcibly entered the premises, an unidentified male and female — not charged — were sitting in the living room; he and other officers proceeded directly to the second floor of the two-story house. Upon entering the rear bedroom Officer Cole observed Ernest Garrison ("Piggy") standing in an adjacent bathroom and saw him discard a plastic bag into the commode and flush it. Retrieving this jetsam he found it contained 173 glassine bags of heroin. Another officer, who proceeded to the front bedroom, found the appellant, nude, in bed, under the covers. Access to the bathroom was only through the rear bedroom.

No contraband was discovered in a search of the bedroom in which the appellant was found, but in the drawer of a combination dresser-wardrobe there was found $168 in currency, $85.18 rolled in coin wrappers, a rent card in the name of the appellant showing a tenancy beginning February 29, 1972 — with the rent paid through May 16th, and a "turn-off notice" addressed to "Miss Shirley Annette Garrison, 1525 Leslie Street" from the Baltimore Gas and Electric Company concerning an unpaid utility bill in the amount of $22.82.

After the appellant and her husband were arrested an inspection of their arms indicated the presence of needle marks estimated to have been from ten days to two weeks in age. The officers next searched the 1969 Oldsmobile parked outside the premises — with negative results — and proceeded to serve the warrant at 1553 Leslie Street.[2] No substantive evidence was offered to connect the appellant with 1553 Leslie Street, nor to identify her as an occupant of the Oldsmobile when the second "controlled purchase" was made.

At the close of the evidence offered by the State the appellant made a motion for judgment of acquittal, which motion was granted on the count which charged her with the possession of the paraphernalia thrown out of the window at 1553 Leslie Street; the motion as to the counts charging possession of heroin was denied and the appellant elected not to offer any evidence in her own behalf. Her renewed motion as to the possessory counts was denied.[3]

The trial judge found as follows:

" . . . [I]t is my finding of fact in this case that these

---

**2.** After entry in 1553 Leslie Street the officers observed Nelly O. Reed discard two or more brown paper bags out of the rear second floor bathroom window. A retrieval of that evidence disclosed them to contain two (2) disposable syringes and four (4) hypodermic needles (in one bag) and 850 empty glassine bags (from the other).

**3.** The trial court granted the motion of Ernest Garrison on those counts which charged him with the possession of the glassine bags and paraphernalia (thrown out of the window at 1553 Leslie Street). The motion of Nelly O. Reed on the counts charging possession of the heroin recovered from Ernest Garrison (at 1525 Leslie Street) was granted.

two people were living together in the house, all of the personal papers indicate that Shirley Garrison made herself responsible, however for the payment of the rent; notices for the turn off of the gas and electricity were sent to her, and, while it is true that the narcotics were in the manual possession of Mr. Garrison, nevertheless, I find through all the circumstances in this case particularly in view of the fact that $168.00 in paper money and $85.18 in coins was part of the contraband, I think it is reasonable, for a reasonable man to draw a reasonable inference that this money was part and parcel of the operation. I find that Mrs. Shirley Garrison was indeed not only in constructive possession but she was in joint possession of this contraband together with Mr. Ernest T. Garrison."

In reviewing the sufficiency of the evidence to sustain a conviction in a criminal case we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, *State v. Devers*, 260 Md. 360, 272 A. 2d 794 (1971), but merely decide whether there was evidence, or probable inferences to be drawn from the evidence, upon which the trial court could find the defendant guilty beyond a reasonable doubt. *Wilson v. State*, 261 Md. 551, 276 A. 2d 214 (1971); *Drouin v. State*, 222 Md. 271, 160 A. 2d 85 (1960).

"Possession" is defined by Code (1957, 1971 Repl. Vol.), Art. 27, § 277(s), to mean "the exercise of actual or constructive dominion or control over a thing by one or more persons." The statute recognizes, as we held in *Rucker v. State*, 196 Md. 334, 340, 76 A. 2d 572, 574 (1950), that such possession may be joint.

*Watson and Harris v. State, supra,* on which the Court of Special Appeals relied in upholding the appellant's conviction, is factually distinguishable. Harris had been observed by a police detective throwing a brown paper bag which contained marijuana from a window; her conduct as the sole occupant of the apartment from which the

marijuana was thrown — and who was the one who threw it — constituted "possession within contemplation of the law." As to the codefendant Watson, Judge Moylan, who delivered the majority opinion for the court, stated (pp. 196-197): [4]

"The appellant Watson was not present at the apartment at the time it was searched. His efforts to disassociate himself from its contents are, nevertheless, unavailing. There was evidence that he maintained two apartments — the one in question and another in the District of Columbia. There was evidence that he had been living at the Livingston Terrace apartment with the appellant Harris for between six months and one year. Watson admitted that he kept clothing and shoes at the apartment. This was substantiated by Harris. Watson admitted paying part of the rent. He admitted to Detective Raubaugh that he 'stayed' at the apartment. Photographs of both appellants were found in the apartment. Robert Wallace, Jr., testified, moreover, *that he and the appellant Watson had been associated in the business of selling narcotics* just prior to the crimes in question. There was further testimony that the appellant *Watson had offered to give Wallace narcotics if Wallace would refrain from testifying against him at the trial* now under review. Under all the circumstances, we think the evidence permitted a finding that the appellant Watson had a possessory interest in the apartment and that he was in joint exclusive control of the contraband marihuana. See *Folk v. State,* 11 Md. App. 508, 275 A. 2d 184." (Emphasis supplied.)

---

4. Judge Davidson dissented, based upon the holdings in Davis and Green v. State, 9 Md. App. 48, 52-53, 262 A. 2d 578, 581, 582-83 (1970); Barksdale v. State, 15 Md. App. 469, 475, 291 A. 2d 495, 498 (1972); and Puckett v. State, 13 Md. App. 584, 587-88, 284 A. 2d 252, 253-54 (1971) — since "he had neither exclusive possession of, exclusive control over, or exclusive access to the apartment [the] evidence is insufficient, in and of itself, to permit an inference that appellant Watson knew of the presence of the narcotics and had control of them." *Id.* 18 Md. App. 218.

Although the appellant Shirley A. Garrison was the lessee of the premises and a resident, there was no substantive evidence that she was "in the business of selling narcotics" ; nor any evidence of any inculpatory statements made by her. *See Henson v. State*, 236 Md. 518, 204 A. 2d 516 (1964), where there was evidence offered concerning the period of surveillance "leading to a reasonable conclusion that he was involved in the narcotics traffic" and the contraband was found within the premises where he resided; *Reed v. State*, 225 Md. 566, 171 A. 2d 464 (1961), *cert. denied*, 368 U. S. 958 (1962), where the appellant admitted that he had sold 40 capsules of heroin and had given the money to Bell (a codefendant); *Dodson v. State*, 213 Md. 13, 130 .A. 2d 728 (1957), where there was evidence that he had sold narcotics to another person a short time before discovery of the marijuana upon premises occupied by him and his wife; *see also Hill v. State*, 237 Md. 630, 206 A. 2d 677 (1965), where oral statements were made admitting use of heroin and witnessing the use of heroin by others in her presence; *Williams v. State*, 231 Md. 83, 188 A. 2d 543 (1963), *cert. denied*, 375 U. S. 851 (1963), where he gave an oral statement admitting use of heroin; *Gault v. State*, 231 Md. 78, 188 A. 2d 539 (1963), *cert. denied*, 375 U. S. 851 (1963), where an oral confession was given admitting the purchase and injection of heroin; *Broadway v. State*, 3 Md. App. 164, 237 A. 2d 820 (1968), *cert. denied*, 250 Md. 731 (1968), where the appellant admitted that he had used drugs while upon the premises.

There was no evidence of the existence of any "fresh needle marks" upon her body as there was in *Hill v. State, supra; Henson v. State, supra; Williams v. State, supra; Gault v. State, supra; Peachie v. State*, 203 Md. 239, 100 A. 2d 1 (1953); *Brooks v. State*, 13 Md. App. 151, 282 A. 2d 516 (1971), *cert. denied*, 264 Md. 746, 749, 750 (1972); *Anderson v. State*, 9 Md. App. 639, 267 A. 2d 302 (1970), *cert. denied*, 259 Md. 729 (1970); *Jason v. State*, 9 Md. App. 102, 262 A. 2d 774 (1970), *cert. denied*, 258 Md. 728, 729 (1970); *Broadway v. State, supra; Waugh v. State*, 3 Md. App. 379, 239 A. 2d 596 (1968); *McCuen v. State*, 3 Md. App. 73, 237 A. 2d 785 (1968), *cert. denied*, 252 Md. 732 (1969).

The seized heroin was not in the plain view of the appellant, nor was there a juxtaposition between her (in the front bedroom) and the contraband being jettisoned by her husband in the bathroom. See *Banks v. State*, 228 Md. 130, 179 A. 2d 126 (1962); *Hignut v. State*, 17 Md. App. 399, 303 A. 2d 173 (1973); *Nutt v. State*, 16 Md. App. 695, 299 A. 2d 468 (1973), *cert. denied*, 269 Md. 764 (1973); *Peterson v. State*, 15 Md. App. 478, 292 A. 2d 714 (1972), *cert. denied*, 266 Md. 735, 738, 741 (1972); *Folk v. State*, 11 Md. App. 508, 275 A. 2d 184 (1971); *Munger v. State*, 7 Md. App. 710, 256 A. 2d 888 (1969); *Speaks v. State*, 3 Md. App. 371, 239 A. 2d 600 (1968), *cert. denied*, 251 Md. 752 (1968).

The appellant, although having a possessory interest in the premises, was not its sole occupant at the time the contraband was found, as were the appellants in *Armwood v. State*, 229 Md. 565, 185 A. 2d 357 (1962); and *Dodson v. State, supra*.[5]

In *Yanch v. State*, 201 Md. 296, 93 A. 2d 749 (1953), the wife of a tavern keeper had been convicted (along with her husband) for unlawfully possessing lottery paraphernalia. Several days prior to the arrests, a police officer upon the premises observed an unidentified male remove from a bag some slips of paper on which he made notations and hand them to the appellant; he *believed* them to be "yellow conventional lottery slips." There was additional evidence that at the time the police made the arrests they found three lottery slips secreted between newspapers piled on top of the piano in the public dining room to the rear of the tavern. The appellant had entered the premises while the raid was in progress; her automobile, as well as her pocketbook, were searched with negative results. There was evidence that discarded newspapers and magazines were picked up by the housekeeper and stored on top of the piano. This Court reversed, holding that there was no legally sufficient evidence to sustain her conviction. Judge Collins, for the

---

5. *See also* Wilkins v. State, 11 Md. App. 113, 273 A. 2d 236 (1971), *cert. denied*, 261 Md. 723, 730 (1971), holding that the inference of the knowledge of the presence of narcotics and control over them may be found from exclusive possession of the premises.

Court, stated: "... We are of opinion that there was no legally sufficient evidence here to support a rational inference that the lottery slips found on the piano on February 11, 1952, were in the possession of the appellant, or that the yellow slips seen by Sergeant Goldstein on February 7, 1952, were lottery slips. Therefore, the motion for a directed verdict for the appellant should have been granted. . . . ." *Id.* 201 Md. at 303. *Compare Tucker v. State,* 244 Md. 488, 224 A. 2d 111 (1966), *cert. denied,* 386 U. S. 1024 (1967), where the tavern was licensed in the name of the wife of the appellant, and he, the manager, was in possession of the only key to a storeroom, in the rear of the licensed premises, where a substantial quantity of narcotics was found.

*See also Williams v. State,* 7 Md. App. 5, 252 A. 2d 880 (1969), where the appellants, licensees of a tavern, had been convicted of the possession of lottery slips which were found in a kitchen towel dispenser, on a porch outside the kitchen, underneath the television cabinet, and in a trash can in the rear yard. The kitchen had been leased to others to serve the dining room food; the appellants were not upon the premises at the time of the raid. The Court of Special Appeals reversed their convictions, predicated upon the fact that they were the licensees of the premises, finding that there was no evidence that they had participated directly in lottery operations, nor were they in physical possession of the slips, and that the evidence was insufficient to show directly, or support a rational inference, that they had constructive possession of the lottery slips, or a measure of control or dominion over them. To the same effect, *see Scarborough v. State,* 3 Md. App. 208, 238 A. 2d 297 (1968), where the wife of the appellant was the licensee of a cafe and lottery slips were found behind the bar opposite where she was seated; other lottery and bookmaking pay-off slips were also found behind the bar. During the raid the appellant swallowed a slip of paper despite attempts by the police to dissuade him and they intercepted a number of in-coming telephone calls from bettors asking for the appellant. Although the Court of Special Appeals found that

the evidence was sufficient to sustain the appellant's conviction for using a portion of the building for the purpose of making book and selling lottery tickets, the evidence was insufficient to establish that he was in possession of the lottery slip and the pay-off slips found "right opposite where Mrs. Emma Scarborough was seated." *Id.* 3 Md. App. at 218.

The possession of lottery slips has been equated with the possession of narcotics — both are contraband and neither require proof of *scienter. See Ford v. State,* 85 Md. 465, 37 A. 172 (1897); *Jenkins v. State,* 215 Md. 70, 137 A. 2d 115 (1957).

In *Tucker v. State,* 19 Md. App. 39, 308 A. 2d 696 (1973), police received information that a room at a motel was occupied by persons using narcotics; the room had been rented by appellant Smith and the register showed it to be occupied by "Mr. and Miss [sic] John C. Smith." Surveillance of the premises over a two day period disclosed that the room was in fact occupied by Tucker and a "Miss Johnson." Smith had been observed to visit the premises six times on one day, on two occasions he was accompanied by others. Additionally, during the period of surveillance, approximately eight other unidentified persons visited the room. After a detective noticed Tucker discard some rubbish and an inspection of the debris disclosed five (5) pieces of aluminum foil coated with a white powdery substance which, by field test, revealed an opium derivative, the officer left to procure a search and seizure warrant. When Tucker and Miss Johnson left the premises they were arrested by other officers, but no drugs were found on their persons. About three and one-half hours later Smith arrived at the motel and was arrested outside the premises; a search of him and his vehicle disclosed no drugs. When the detective returned with a warrant a search of the motel room disclosed $800.00 in cash in the pocket of a jacket hanging in the closet and 27 aluminum packets containing heroin inside a cereal box. Smith admitted he had paid the rent, but insisted that the money had been provided by Tucker; he had no key to the motel room although he had stayed overnight on at least one occasion.

In reversing the conviction of the appellant Smith for the

possession of heroin and maintaining a common nuisance, Judge Davidson, for the Court of Special Appeals, stated:

"The record establishes that appellant Smith, who registered for the room and paid for its occupancy for two days, had a proprietary interest in the premises upon which the heroin was found; that he was a frequent visitor to those premises; and that he knew that the appellant was a heroin addict. But the record further shows that no drugs of any kind were found on the person of appellant Smith or in his car at the time of his arrest; that he was not arrested in the room in which the heroin was located; that the heroin in that room was secreted and was not in plain view; that there was no direct evidence that appellant Smith was engaged in any violation of the narcotics laws; and, most importantly, that the trial court found that the heroin discovered on the premises was for the sole use of the appellant Tucker. The record clearly establishes that appellant Smith did not have physical possession of the heroin. In the light of the trial court's finding that the heroin was for the sole use of appellant Tucker, we cannot say that the evidence showed directly or supported a rational inference that appellant Smith had constructive possession of or control over the heroin. *Haley, Peterson & Roberts v. State*, 7 Md. App. 18, 33-34, 253 A. 2d 424, 433 (1969); *Scott v. State*, 7 Md. App. 505, 530, 256 A. 2d 384, 398 (1969), *cert. denied*, 256 Md. 747 (1970). We find that the evidence was not sufficient to sustain appellant Smith's conviction for possession of heroin. *Williams and McClelland v. State*, 5 Md. App. 450, 458, 247 A. 2d 731, 737 (1968), *cert. denied*, 252 Md. 731, 734 (1969). The motion for judgment of acquittal was improperly denied. . . ." *Id.* 19 Md. App. 44-5.

In *Barksdale v. State*, 15 Md. App. 469, 291 A. 2d 495 (1972), the appellant was found upon premises which were

searched pursuant to a warrant. Found upon a kitchen table was a woman's purse containing eight glassine bags of heroin, as well as a cigarette case containing 20 glassine bags, a set of keys and $47.50; the keys fit the locks to the entrance of the building and the apartment raided. Amanda Taylor and the appellant were the only occupants at the time of the raid, both exhibited numerous old and fresh needle marks. No paraphernalia was found. When Amanda Taylor was searched at the police station she was found to have 46 glassine bags secreted within her vagina. After Barksdale's arrest and before his removal from the apartment he donned "more clothing" from a closet in the apartment.

Judge Orth (now Chief Judge), writing for the Court of Special Appeals, stated:

> ". . . These meager facts did not show nor was it a rational inference therefrom that Barksdale exercised actual or constructive dominion or control over the heroin and glassine bags found in a lady's purse and a lady's cigarette case on the kitchen table and in Amanda Taylor's vagina, and that he kept or maintained the apartment. . . . We hold the evidence was not sufficient in law to sustain the convictions. . . . If the State had legally sufficient evidence to establish that Barksdale was guilty of the crimes of which he was convicted it did not adduce it at the trial here reviewed. . . ." *Id.* 15 Md. App. at 475-6.

In *Puckett v. State*, 13 Md. App. 584, 284 A. 2d 252 (1971), *cert. denied*, 265 Md. 742 (1972), a husband and wife were both convicted of the possession of marijuana with intent to distribute. Sixteen marijuana plants, about two to three feet in height, were found growing at the edge of a vegetable garden on property jointly owned by them and where they made their home. The evidence established that Mrs. Puckett had directed a tenant not to mow the particular area where the plants were growing; it was further established that Jerry Paul Puckett, a construction worker, spent most of his time on work in Pennsylvania.

Judge Thompson, for the Court of Special Appeals, in reversing Jerry Paul Puckett's conviction, stated concerning the sufficiency of the evidence:

" . . . The sole evidence incriminating him consisted of the presence of the plants on the property jointly owned by the appellants and on which they made their home. Although the trial judge did not in his opinion address himself to this question, there was testimony that Mr. Puckett spent most of his time on construction work in Pennsylvania. Ownership and exclusive possession of property may in some circumstances be sufficient to create a rational inference that the owner was in possession of a prohibited substance growing thereon. However, we cannot here overlook the findings of the trial judge that Mrs. Puckett was the active party, and the total absence of evidence of Mr. Puckett's involvement. He may well have been guilty but the proof does not support it. See *Davis & Green v. State*, 9 Md. App. 48, 262 A. 2d 578, *Propst v. State*, 5 Md. App. 36, 245 A. 2d 88. We find his convictions were clearly erroneous." *Id.* 13 Md. App. 587-8.[6]

In *Davis v. State*, 9 Md. App. 48, 262 A. 2d 578 (1970), the conviction of the appellant Davis for control over marijuana sold by a female co-occupant of his apartment, Green, on February 28, 1968, was reversed where the only evidence linking him with the marijuana was that he was a co-lessee of the premises, had paid the rent, resided there at least two (2) nights weekly and maintained an intimate personal relationship with Green.

Chief Judge Murphy (now Chief Judge of this Court), writing for the Court of Special Appeals, stated:

"The only evidence linking appellant Davis with

---

6. In Propst v. State, 5 Md. App. 36, 245 A. 2d 88 (1968), *cert. denied,* 252 Md. 731, 732 (1969), the conviction of the appellant Ollie May, Jr., for knowingly permitting an apartment to be used for gambling purposes was reversed where the sole evidence to convict him was the fact of his residence at the raided premises.

the marihuana sold by Green to Manzari on February 28, 1968 was that he was a co-lessee of the premises, resided there at least two nights weekly, and had an intimate personal relationship with the co-lessee Green. It was not shown that Davis was on the premises at the time of the sale. There was no evidence or inferences drawable therefrom to show *where in the apartment Green kept the marihuana which she sold Manzari*, nor was there any evidence showing that Davis *knew Green had marihuana on the premises* at that time or was using the apartment for the purpose of keeping and/or selling that prohibited narcotic drug. The conviction of Davis for exercising restraining or directing influence over the marihuana sold by Green to Manzari would appear to rest entirely on the fact of his co-occupancy of the apartment and his relationship with Green. To convict Davis because, as a joint occupant of the premises from which the marihuana was sold, he had *non-exclusive access thereto is to infer his guilt solely on account of his intimate relationship and association with Green*. We think this, without more, too thin a nexus upon which to predicate guilt, and we therefore reverse Davis's conviction of control of narcotics on February 28, 1968." *Id.* 9 Md. App. 55.[7] (Emphasis supplied.)

In *Scott v. State*, 7 Md. App. 505, 256 A. 2d 384 (1969), *cert. denied*, 256 Md. 747 (1970), the conviction of the appellant was upheld in connection with narcotics found in the bedroom occupied by him, but the court held that heroin recovered from the pocketbook belonging to his sister found on the first floor of the premises, which was occupied by the sister, could not afford a basis for establishing that those

---

7. Davis's conviction for possession of marijuana and narcotic paraphernalia on March 23, 1968 (the date of the arrest) was sustained where the marijuana was in plain view on the coffee table as was the paraphernalia and he possessed "fresh needle marks."

narcotics were in the appellant's possession and under his control.

In *Wimberly v. State*, 7 Md. App. 302, 254 A. 2d 711 (1969), the conviction of the appellant for control over marijuana and control over amphetamines and barbiturates was reversed. The appellant, who had no proprietary interest in the premises, was one of approximately twelve (12) young men found there when the premises were searched; he was apprehended coming from a bathroom. Although pills discovered in the bathtub were found to be methadone, he had not been convicted for possession or control of that drug. The marijuana, amphetamines and barbiturates found upon the premises were found (1) in a pipe, with aluminum foil atop the bowl, on the kitchen sink, (2) in a kitchen cabinet, (3) in a dresser of the bedroom occupied by the owner of the house, and (4) upon the persons of several of the young men seated in the living room.

Judge Orth, for the court, stated:

"Since no prohibited drugs were found in the physical possession of the appellant, since the only drug proved to have been found *in the bathroom* did not support the allegations of the charges of which he was convicted, since we cannot say that the appellant was in control of the drugs *found in the kitchen or bedroom or on the person of others* arrested, and since there was no sufficient evidence of drugs being found in the living room other than on the person of others in the living room and since in any event the appellant had been taken into the living room by the police and seated by them by the picture window, the evidence, either considered in its totality or item by item, did not show directly nor did it support a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the guilt of the appellant of the offenses of which he was convicted. *Williams v. State*, 5 Md. App. 450. Therefore we must conclude that the judgment of

the court on the evidence was clearly erroneous."
*Id.* 7 Md. App. 308. (Emphasis supplied.)

In *Haley v. State,* 7 Md. App. 18, 253 A. 2d 424 (1969), the convictions of three appellants who had been found in joint possession of marijuana were reversed. The marijuana had been found upon the premises (1) in a bedroom dresser beneath some clothing, (2) under a mattress in another bedroom, and (3) in a kitchen closet. All the appellants — none of whom had any proprietary interest in the premises, nor resided there — were arrested in the living room; there was no evidence of any prior association by them with the premises. Judge Orth, writing for the court, stated:

"With regard to the evidence found in the house, as to indictment No. 34985, under which each appellant was convicted and sentenced both for possession and control of marijuana, and as to the individual indictments charging each of them separately, we do not think that the evidence was sufficient to establish that any of them were 'possessed' of the drugs and paraphernalia found on the premises or that those articles were 'under the control' of any of them as those terms are defined. We reach this conclusion in considering that none of the appellants had any proprietary interest in the premises or lived there; that it was not shown, outside of the search warrant, that any of them had been on the premises at any time in the past; that there was no evidence how long they had been on the premises prior to the arrival of the police; that the police entered the premises and made the arrests 'immediately' upon their arrival — 'we knocked on the door and said "Police". No one answered. And we forcibly entered the premises with a maul at this time.' The lapse of time between the knocking and entering was only such time 'it takes to hit the door twice with a maul, pretty rapidly * * * thirty seconds, it could have been five to ten (seconds)'; that the articles were not in the living room but in a

dresser in a bedroom under clothing, under a mattress in another bedroom, in a closet in the kitchen; that they were not found in close proximity to the appellants; and that there was no direct evidence properly admissible that they were engaged in violation of the narcotic laws. The appellants did not have physical possession of the articles, and we cannot say that the evidence showed directly or supported a rational inference that the appellants had constructive possession of the articles or that they had obtained a measure of control or dominion over them or that they exercised restraining or directing influence over them. We find that the evidence as to the articles found on the premises was not sufficient to sustain the convictions and that the lower court was clearly wrong in its judgment thereon. Md. Rule 1086. See 91 A.L.R.2d. *Anno: Narcotic-Possession — What Constitutes,* pp. 812-831." *Id.* 7 Md. App. 33-4.

No drugs of any kind nor paraphernalia were discovered in a search of the bedroom where the appellant was found; nor was there any evidence that the packet of heroin discarded by her husband had ever been kept in the bedroom, or had ever been in the plain view of the appellant. As pointed out in *Yanch, Scarborough, Barksdale, Scott, Wimberly* and *Haley,* there is the same lack of a close proximity on the part of the appellant to the contraband, as a basis for charging her with possession. As the lessee, her occupancy of the premises, together with her husband, was similar to the possessory interest of the appellant Smith in *Tucker,* and no different than the joint interest of the husband in *Puckett,* or in the interest possessed in *Davis* as a co-lessee. Indeed, her possessory interest in the premises was not dissimilar to that possessed by the licensees in *Williams,* and to that of the wife of the licensee in *Yanch.* We find the holdings and reasoning in these cases applicable to the appellant here.

The trial judge in convicting the appellant coupled her interest as lessee of the premises with the finding that the money recovered in the bedroom (totalling $253.18) was

"part of the contraband — was part and parcel of the operation." The presence of $168.00 in currency and $85.18 rolled in coin wrappers was not necessarily incriminating. The currency was comprised of two twenty-dollar bills, seven ten-dollar bills, five of five-dollar denomination and thirty-three notes of one-dollar each. There is no evidence — either from quantity, nor by way of arrangement or secretion — that the money recovered was the proceeds from the sale of heroin, nor a "bank" from which to purchase it.

In the absence of any evidence to support such a conclusion, the trial judge drew an impermissible inference — under all the circumstances — that such money "was part of the contraband," that [there is] "a reasonable inference that this money was part and parcel of the operation."

The contents of the affidavit which was the basis for the search and seizure warrant was not substantive evidence at the trial. *Noel v. State,* 202 Md. 247, 250, 96 A. 2d 7, 9 (1953); *Lee v. State,* 198 Md. 383, 386, 84 A. 2d 63, 64 (1951); *Goss v. State,* 198 Md. 350, 353-4, 84 A. 2d 57, 58 (1951). *See also Wilkins v. State,* 11 Md. App. 113, 273 A. 2d 236 (1971), *cert. denied,* 261 Md. 723, 730 (1971). As Chief Judge Marbury said for the Court in *Lee v. State, supra:*

"... The affidavit itself is not evidence of anything. Its purpose is to enable the officer to get a search warrant in a suspected case, and thereby to secure evidence which can be properly presented at the trial. The facts shown in the affidavit may not even be put in evidence at all in the case. . . . ." *Id.* 198 Md. 386.

Although the information from the informant concerning the appellant's reported activities at both Leslie Street addresses and in the 1969 Oldsmobile never came before the court as substantive evidence, the conclusion is inescapable that such data must have played some part in influencing the inference drawn by the trial judge concerning the money found in the bedroom since, in suspending the sentence on the appellant's codefendant (Mrs. Reed) he observed that "she was being used, no question about it." In view of the fact that neither appellant, nor her husband, nor Mrs. Reed

gave any testimony in the trial, such a conclusion could only have been gleaned from the content of the affidavit for the search warrant.

Although the State is not required to show that the accused's dominion or control over the narcotic drug was knowing and willful, and it is no excuse that the accused did not know that, that over which dominion and control was being exercised was a prohibited narcotic drug (*Ford v. State, supra; Jenkins v. State, supra*), before the State may obtain a conviction it must adduce evidence to meet the test of legal sufficiency; that evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense contemplated by the statute, *i.e.*, that she exercised some restraining or directing influence over it.

The appellant and her husband may well have jointly participated in the distribution of heroin, but on this record there was no substantive evidence offered which showed directly or supported a rational inference that she had "the exercise of (either) actual or constructive dominion or control" — solely or jointly with her husband — over the 173 glassine bags of heroin seized while being discarded by her spouse. The action of the trial court in denying appellant's motion for judgment of acquittal was "clear error."

Accordingly, we vacate the judgments of the Court of Special Appeals and of the Criminal Court of Baltimore and remand the case for a new trial under our holdings in *Gray v. State*, 254 Md. 385, 255 A. 2d 5 (1969), *cert. denied*, 397 U. S. 944 (1970), since it appears that additional substantive and probative evidence of the guilt of the appellant might be adduced by the State at another trial.

> *Judgments of the Court of Special Appeals and of the Criminal Court of Baltimore reversed and the case remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*